[No. S058207. Jan. 29, 1998.]

FLOYZELL JONES et al., Plaintiffs and Appellants, v.
KMART CORPORATION et al., Defendants and Appellants.

**COUNSEL**

Darryl Parker, Sarah Lawrence, Price and Associates, Pamela Y. Price and Karen T. Wolff for Plaintiffs and Appellants.

Alan L. Schlosser and Edward M. Chen as Amici Curiae on behalf of Plaintiffs and Appellants.

J. Randall Andrada, Sedgwick, Detert, Moran & Arnold, Frederick D. Baker, Stuart W. Miller and Linh N. Ha for Defendants and Appellants.

**OPINION**

**MOSK, J.**—Civil Code section 52.1 authorizes an action at law, a suit in equity, or both, against anyone who interferes, or tries to do so, by threats, intimidation, or coercion, with an individual's exercise or enjoyment of rights secured by federal or state law. Subdivision (h) of section 52.1 permits a prevailing plaintiff to recover attorney fees. We must decide whether plaintiffs could recover damages on the basis of conduct by defendants that allegedly interfered with one plaintiff's rights under the federal and state Constitutions' search and seizure provisions. We hold that plaintiffs were not entitled to damages under section 52.1.

Defendants appealed from a judgment and order awarding plaintiff Belafanti Jones $71,394.25 in damages, including $30,000 under Civil Code section 52.1—unlabeled statutory references herein are to that code—and $216,762.50 in attorney fees under that statute. The Court of Appeal reversed that portion of the judgment awarding damages and attorney fees under section 52.1, but otherwise affirmed.

Jones, who is an African-American, aroused the suspicion of a Kmart employee who believed he might be shoplifting. When he left the store, Kmart employees pursued him. A struggle ensued and they seized him. One

searched his left front pants pocket and grabbed his arm to handcuff him. As a result of the struggle, Jones suffered lingering back, neck and shoulder pain, and property damage; the back pain lasted about a year. He also sought psychological counseling. It turned out that he had not shoplifted anything.

The jury returned a verdict for Jones on his claims of false imprisonment, battery, interference with his constitutional rights "by using excessive force against him [and] by the illegal search of his person," and negligence. It found, however, that defendants did not discriminate against or subject him to violence or intimidation because of his race. Under the heading of compensatory damages, it awarded him $1,394.25 in economic and $40,000 in noneconomic damages. As mentioned, it awarded him $30,000 for interference with his constitutional rights. For this tort he also recovered $188,724 in attorney fees and $28,038.50 for time spent on his fees application.

The Court of Appeal's decision eliminated the attorney fee award and Jones's $30,000 in damages for interference with his constitutional rights. Plaintiffs petitioned for review on the ground that defendants' conduct fell within the scope of section 52.1.

Section 52.1, subdivision (a), permits the Attorney General or any city or district attorney to sue in equity "[w]henever a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state . . . ." As alluded to, subdivision (b) of section 52.1 allows anyone whose rights have been interfered with as described in subdivision (a) to sue for damages or for equitable relief, and subdivision (h) permits a prevailing plaintiff to recover "reasonable attorney's fees."

Plaintiffs' section 52.1 claim stated in effect that defendants' use of excessive force and their illegal search of Jones interfered with his state and federal constitutional rights. The jury instructions predicated defendants' section 52.1 liability solely on a claim of interference with either the Fourth Amendment to the United States Constitution or article I, section 13 of the California Constitution.

I

■ The Court of Appeal accurately explained the nature of the constitutional provisions in question: "The proscription against unreasonable

search and seizure in the Fourth Amendment applies only to the acts of government officers or their agents. The right secured is a right to be free from unreasonable governmental intrusion or acquisition. (*Skinner* v. *Railway Labor Executives' Assn.* (1989) 489 U.S. 602, 614 [103 L.Ed.2d 639, 657-658, 109 S.Ct. 1402]; *Burdeau* v. *McDowell* (1921) 256 U.S. 465, 475 [67 L.Ed. 1048, 1050-1051, 41 S.Ct. 574, 13 A.L.R. 1159]; *In re Christopher H.* (1991) 227 Cal.App.3d 1567, 1572 [278 Cal.Rptr. 577].) In order for conduct by private parties to be deemed state action under the federal Constitution, 'the party charged with the deprivation [of a federal right] must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State. Without a limit such as this, private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them.' (*Lugar* v. *Edmondson Oil Co., Inc.* (1982) 457 U.S. 922, 937 [73 L.Ed.2d 482 495, 102 S.Ct. 2744]; see also *Collins* v. *Womancare* (9th Cir. 1989) 878 F.2d 1145, 1151-1156 [citizen's arrests performed by private employees did not constitute state action]; *In re Christopher H., supra,* 227 Cal.App.3d at p. 1576 [detention and search by private security guards did not implicate Fourth Amendment rights].) . . .

"Similarly, the right to be free from unreasonable search and seizure provided in article I, section 13 of the California Constitution is subject to a state action requirement. (*Hill* v. *National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 19 [26 Cal.Rptr.2d 834, 865 P.2d 633]; *In re William G.* (1985) 40 Cal.3d 550, 557, fn. 5, 558-559 [221 Cal.Rptr. 118, 709 P.2d 1287]; *People* v. *Zelinski* (1979) 24 Cal.3d 357, 365 [155 Cal.Rptr. 575, 594 P.2d 1000].)"

 Plaintiffs do not deny that defendants' actions were those of private actors and that the state played no role in causing Jones's losses. They contend, however, that because section 52.1 provides for relief regardless of whether the offender acted under color of law, the Legislature has removed any state action requirement in every case in which a private actor commits misconduct that, if committed by a state actor, would violate a constitutional provision.[1]

Plaintiffs misunderstand the statute's scope, and accordingly miss the point. They are correct that there is no state action requirement per se.

---

[1]The United States Supreme Court has defined improper "action taken 'under color of' state law" to mean "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law . . . ." (*United States* v. *Classic* (1941) 313 U.S. 299, 326 [61 S.Ct. 1031, 1043, 85 L.Ed. 1368].) This definition applies to section 1983 of title 42 of the United States Code (*Lugar* v. *Edmonson Oil Co.* (1982) 457 U.S. 922, 928 & fn. 8, 929 & fn. 13 [102 S.Ct. 2744, 2749-2750, 73 L.Ed.2d 482]), which forbids depriving an individual of a legal benefit while acting "under color of

Section 52.1 nowhere mentions state action. But section 52.1 does require an attempted or completed act of interference with a legal right, accompanied by a form of coercion. Plaintiffs produced no evidence that defendants interfered with Jones's rights against unreasonable search and seizure. When they assert that defendants interfered with those rights by directly violating them, they are mistaken: Only the government or its agents can do so.

We recognize that because section 52.1 proscribes attempted or completed interferences with rights secured by law, it may provide a cause of action based on such rights when a private actor interferes with them or attempts to do so by coercion, even if the wrongdoer could not violate them directly. For example, if a burglary victim, suspecting that his stolen property lay hidden in a nearby house, stood at the door with the police and threatened to injure the homeowner if she did not change her mind and consent to an official and warrantless search of her premises, the homeowner might, under section 52.1, be able to sue her neighbor for interfering with her Fourth Amendment rights, assuming for purposes of this example that the Fourth Amendment protected her against warrantless searches by the state without her consent under the circumstances. For another example, the right to vote (*Burdick* v. *Takushi* (1992) 504 U.S. 428, 441 [112 S.Ct. 2059, 2067, 119 L.Ed.2d 245]) includes a right to vote, under the Fifteenth, Nineteenth and Twenty-fourth Amendments to the United States Constitution, free of certain burdens (*Ex parte Yarbrough* (1884) 110 U.S. 651, 664-665 [4 S.Ct. 152, 158-159, 28 L.Ed. 274]; *Williams* v. *Rhodes* (1968) 393 U.S. 23, 29 [89 S.Ct. 5, 9-10, 21 L.Ed.2d 24]). To the extent that the right to vote is guaranteed by the federal Constitution, or by other "laws" (§ 52.1), a private actor's coercive attempted or completed interference with it might be actionable under section 52.1.

But this case does not present a similar situation. Plaintiffs in effect pleaded interference with the Fourth Amendment to the United States Constitution and article I, section 13, of the California Constitution. Yet they only presented evidence that defendants themselves conducted an aggressive search and seizure. However rough defendants' treatment of Jones may have been, it did not interfere with his ability to assert his rights under those constitutional guaranties. Those rights were not put in jeopardy in this dispute, as they might have been if defendants had called the police and then coercively interfered with Jones's Fourth Amendment rights when he attempted to exercise them *against the police*. Because plaintiffs presented no

any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . ." By removing the requirement that the offensive action be done "under color of law," our Legislature determined that the actor need not necessarily be abusing a form of authority provided by law—he or she may, in some cases, be acting in a private capacity, with no misuse of actual or apparent state-granted power.

evidence that defendants interfered with Jones's constitutional rights as pleaded, they were not entitled to the instructions the court gave under section 52.1. "A party is not entitled to an instruction on a theory for which there is no supporting evidence." (*People* v. *Memro* (1995) 11 Cal.4th 786, 868 [12 Cal.4th 783d, 47 Cal.Rptr.2d 219, 905 P.2d 1305].)

We reach our conclusion notwithstanding plaintiffs' assertion that because sections 11H[2] and 11I[3] of the Massachusetts Civil Rights Act of 1979 (Mass. Gen. Laws Ann., ch. 12, §§ 11H, 11I (West 1996)) provided the model for the portions of section 52.1 we discuss (see Final Rep., Atty. Gen.'s Com. on Racial, Ethnic, Religious, and Minority Violence (Apr. 1986) pp. 23-24), and Massachusetts courts have construed the commonwealth's law to apply against private actors' putative "violations" of legal guaranties that only limit the state's power, we should so construe section 52.1. (See *Erlich* v. *Municipal Court* (1961) 55 Cal.2d 553, 558 [11 Cal.Rptr. 758, 360 P.2d 334].) But even assuming, as we do solely for purposes of argument, that ambiguity in the language of section 52.1 requires resort to nontextual rules of statutory construction, we decline to construe section 52.1 in that manner.

Plaintiffs rely on a statement in *Bell* v. *Mazza* (1985) 394 Mass. 176, 181 [474 N.E.2d 1111, 1114] that the Massachusetts Legislature "intended to incorporate a proscription on private acts in deprivation of secured constitutional rights."

In *Bell*, the court, relying on its prior holding that the United States and Massachusetts Constitutions guarantee the right "to use and improve [land] according to the owner's conceptions of pleasure, comfort or profit, and of the exercise of liberty and the pursuit of happiness" (*Brett* v. *Building*

---

[2]"Whenever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, the attorney general may bring a civil action for injunctive or other appropriate equitable relief in order to protect the peaceable exercise or enjoyment of the right or rights secured. Said civil action shall be brought in the name of the commonwealth and shall be instituted either in the superior court for the county in which the conduct complained of occurred or in the superior court for the county in which the person whose conduct complained of resides or has his principal place of business."

[3]"Any person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with, as described in section 11H, may institute and prosecute in his own name and on his own behalf a civil action for injunctive and other appropriate equitable relief as provided for in said section, including the award of compensatory money damages. Any aggrieved person or persons who prevail in an action authorized by this section shall be entitled to an award of the costs of the litigation and reasonable attorneys' fees in an amount to be fixed by the court."

*Commissioner of Brookline* (1924) 250 Mass. 73, 77 [145 N.E. 269, 270]), held that plaintiff landowners had a civil rights cause of action against neighbors unhappy about their plan to build a tennis court. A neighbor allegedly blustered " 'that he had "connections" and would do "anything," "at any cost," to prevent the [plaintiffs'] construction of any tennis court.' " (*Bell* v. *Mazza, supra,* 394 Mass. at p. 179 [474 N.E.2d at p. 1113].)

Though our research has not resulted in a clear resolution of the point, the right announced in *Brett* v. *Building Commissioner of Brookline, supra,* 250 Mass. 73 [145 N.E. 269], may apply against private actors in Massachusetts, not just the commonwealth or its subdivisions. (See Mass. Const., pt. 1, art. I; *Reeves* v. *Scott* (1949) 324 Mass. 594, 598 [87 N.E.2d 833, 835]; *General Outdoor Adv. Co.* v. *Department of Public Wks.* (1935) 289 Mass. 149, 183-184 [193 N.E. 799, 815]; cf. *Powers* v. *Wilkinson* (1987) 399 Mass. 650, 656, fn. 10 [506 N.E.2d 842, 846].) If so, the constitutional guaranty would be similar to our state Constitution's right to privacy (art. I, § 1), which an individual acting in a private capacity can violate. (*Hill* v. *National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 20 [26 Cal.Rptr.2d 834, 865 P.2d 633].) And if so, the issue of state action did not of necessity present itself in *Bell*: Rather, the question would only be of alleged interference by threats with a constitutional right guaranteed to the *Bell* plaintiffs to improve their land—a right they enjoyed against anyone. In that case, the statement in *Bell* that the Massachusetts Legislature "intended to incorporate a proscription on private acts in deprivation of secured constitutional rights" (*Bell* v. *Mazza, supra,* 394 Mass. at p. 181 [474 N.E.2d at p. 1114]) would be a dictum as applied to rights that only the state or its agents can violate. There would be no reason to assume that our Legislature relied on that statement beyond *Bell*'s actual holding.

But *Bell* leaves unanswered the question against whom the right to use property applies. By focusing on state action rather than the nature of the right being coercively interfered with, *Bell* and its progeny have given rise to claims, such as one made under Maine statutes also modeled on sections 11H and 11*I* of the Massachusetts Civil Rights Act of 1979, that the statutes provide remedies against a private party for violating "rights protected by the Constitution, even those rights that are traditionally protected only against governmental action." (*Phelps* v. *President & Tr. of Colby Col.* (Me. 1991) 595 A.2d 403, 405.) If our Legislature also interpreted *Bell* in this fashion, then it could be argued that *Bell*'s statement about legislative intent, dictum or not in relation to certain rights, was meant to be applied broadly in California as well.

But whether or not the Massachusetts Legislature intended "to incorporate a proscription on private acts in deprivation of secured constitutional rights"

(*Bell* v. *Mazza, supra,* 394 Mass. at p. 181 [474 N.E.2d at p. 1114]) that in fact only the state or its agents can violate, plaintiffs point to no evidence that our Legislature intended to do so, and we doubt that it did. Section 52.1's language simply does not support that construction. So interpreting section 52.1 would permit remedies for a private actor's putative "violation" of rights that apply only against the state or its agents, and section 52.1 provides no such remedies. ■ As defendants observe, the rule of deference to another state's interpretation of a statute that provided a model for a California statute "establishes . . . only a presumption of legislative intent. Moreover, even when the presumption properly operates it does not compel the adoption of the judicial construction of the other jurisdiction's statute." (*State of California* ex rel. *Van de Kamp* v. *Texaco, Inc.* (1988) 46 Cal.3d 1147, 1189-1190 [252 Cal.Rptr. 221, 762 P.2d 385] (conc. and dis. opn. of Mosk, J.).)

■ The chief defect of *Bell* v. *Mazza, supra,* 394 Mass. 176 [474 N.E.2d 1111], is its focus on state action, an item not mentioned in the Massachusetts civil rights laws or the California and Maine laws modeled on them, rather than on the scope of the right protected. In our view, *Bell* and its progeny distracted the plaintiffs in *Phelps* v. *President & Tr. of Colby Col., supra,* 595 A.2d 403, and those herein: By focusing on state action, the Massachusetts cases miss the plain statutory mandate that the wrongdoing party *coercively interfere with the exercise of a constitutional or other legal right.* (See *Kolodziej* v. *Smith* (1992) 412 Mass. 215 [588 N.E.2d 634]; *Rodriques* v. *Furtado* (1991) 410 Mass. 878 [575 N.E.2d 1124]; *Bally* v. *Northeastern University* (1989) 403 Mass. 713 [532 N.E.2d 49]; *O'Connell* v. *Chasdi* (1987) 400 Mass. 686 [511 N.E.2d 349]; and *Redgrave* v. *Boston Symphony Orchestra* (1987) 399 Mass. 93 [502 N.E.2d 1375].) To the extent that *Bell* and its Massachusetts progeny bear this defect, we decline to follow them in applying California law.

Plaintiffs also contend that the words "whether or not acting under color of law" (§ 52.1, subd. (a)) would be rendered surplusage under the reading of the statute that we reach. We disagree. To cite one example, among the rights secured to all persons under California's jurisdiction is "the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of their race, color, religion, ancestry, national origin, political affiliation, sex, sexual orientation, age, disability, or position in a labor dispute, or because another person perceives them to have one or more of those characteristics." (§ 51.7, subd. (a).) The subdivision states that its "identification . . . of particular bases of discrimination is illustrative rather than restrictive" (*ibid.*), though section 51.7 "does not apply to statements concerning positions in a labor dispute which are made during otherwise lawful labor picketing" (*id.*, subd. (a)).

The Legislature enacted section 52.1 to stem a tide of hate crimes. (*In re M.S.* (1995) 10 Cal.4th 698, 706-707, fn. 1 [42 Cal.Rptr.2d 355, 896 P.2d 1365].) The statutory language fulfills that purpose by providing remedies for certain misconduct that interferes with any "right[] secured by the Constitution or laws of the United States, or . . . of this state . . . ." (§ 52.1, subd. (a); *id.*, subd. (b).) The rights guaranteed in section 51.7 apply against private actors, not just those whose conduct is chargeable to the state, and as long as interference or attempted interference with them is accompanied by threats, intimidation, or coercion, section 52.1 provides remedies for that misconduct. Unquestionably there are other statutory rights with which a private actor can interfere or try to do so through threats, intimidation or coercion. The Court of Appeal, citing *People* v. *Lashley* (1991) 1 Cal.App.4th 938, 950-951 [2 Cal.Rptr.2d 629], mentioned section 43's " 'right of protection from bodily restraint or harm . . . .' "

And as stated, an individual acting privately can violate, and hence interfere with, our state Constitution's right to privacy. Similarly, the constitutional prohibitions against slavery and involuntary servitude apply against any individual. (*United States* v. *Kozminski* (1988) 487 U.S. 931, 942 [108 S.Ct. 2751, 2759-2760, 101 L.Ed.2d 788]; *Griffin* v. *Breckenridge* (1971) 403 U.S. 88, 104-105 [91 S.Ct. 1790, 1799-1800, 29 L.Ed.2d 338].) The same is true of the constitutional right to interstate travel. (*United States* v. *Guest* (1966) 383 U.S. 745, 759-760, fn. 17 [86 S.Ct. 1170, 1179, 16 L.Ed.2d 239].) Section 52.1 provides remedies for such interferences, on proof of threats, intimidation or coercion, whether or not the actor is acting under color of law, and whether or not state action is present. The words are not surplusage. (Accord, *Phelps* v. *President & Tr. of Colby Col.*, *supra*, 595 A.2d at p. 407 [rejecting a similar contention].)

## II

The Court of Appeal's judgment is affirmed. The parties are to bear their own costs on review in this court.

George, C. J., Kennard, J., Werdegar, J., and Boren, J.,* concurred.

**BROWN, J.,** Concurring.—In this case, the sole basis for plaintiffs' claim under Civil Code section 52.1 is that defendants interfered with one plaintiff's rights under the Fourth Amendment to the United States Constitution and article I, section 13 of the California Constitution by *directly violating them.* The majority properly rejects the claim on the grounds that defendants

---

*Presiding Justice of the Court of Appeal, Second District, Division Two, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

were not state actors. (Maj. opn., *ante*, at p. 334.) In my view, we need not, and should not, engage in unbridled speculation as to what the statute "may provide" in other contexts. (See, e.g., *id.* at pp. 334-335, 338.) The vices of such dictum should be obvious. (See *id.* at pp. 335-337 [describing the havoc wrought by dictum in Massachusetts cases].)

Baxter, J., concurred.