[No. A114794. First Dist., Div. Three. May 15, 2007.]

THE PEOPLE, Plaintiff and Appellant, v.
GILBERTO PEREZ PEREIRA, Defendant and Respondent.

**COUNSEL**

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Mary Jo Graves, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Rene A. Chacon and Arthur P. Beever, Deputy Attorneys General, for Plaintiff and Appellant.

Mark Shenfield, under appointment by the Court of Appeal, for Defendant and Respondent.

## OPINION

**POLLAK, J.**—The People appeal from the dismissal of charges against defendant Gilberto Perez Pereira following the granting of defendant's motion to suppress evidence. The court suppressed evidence found as the result of a warrantless search of the contents of a package defendant mailed using a false name. The Attorney General contends that defendant's use of a fictitious name forfeited any legitimate expectation of privacy and necessarily constituted an abandonment of the package. We conclude that whether a person abandons property mailed under a fictitious name is a question of fact and that there is substantial evidence to support the trial court's finding that defendant did not abandon the package in this case. We therefore shall affirm.

### FACTS AND PROCEDURAL HISTORY

Defendant was first charged with offenses evidenced by the seized materials in a prior action that was dismissed after the trial court granted defendant's motion to suppress, pursuant to Penal Code section 1538.5. The district attorney refiled the charges and following defendant's waiver of a preliminary hearing an information was filed charging defendant with transporting methamphetamine (Health & Saf. Code, § 11379, subd. (a)), possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)), possession of ammunition (Pen. Code, § 12316, subd. (b)(i)), possession of marijuana for sale (Health and Saf. Code, § 11359), two counts of transporting marijuana (Health & Safe. Code, § 11360, subd. (a)), second degree burglary (Pen. Code, § 459), and possession of drug paraphernalia, a misdemeanor (Health & Saf. Code, § 11364, subd. (a)). Defendant again moved to suppress and the parties submitted the motion on the transcript of the testimony adduced in the prior proceedings.

The evidence received in connection with the motion was largely undisputed. On August 10, 2005, defendant brought a sealed package to a shipping business owned by Floyd Ponce for overnight delivery to Milwaukee, Wisconsin. The invoice identified the sender as "Gilberto Santiago" and gave a return address that was not defendant's address. Defendant had sent packages through this shipping company four or fives times previously. As he had done in the past, he requested a routing number for the package so he could track it.

The following day, Ponce became suspicious of the package, opened it and found a teddy bear inside. Ponce noticed some abnormal stitching on the stuffed animal, as if something was inside the bear. Ponce knew that a high postage had been paid for the overnight package, that defendant wished to track the package, and that the return address was different from the one defendant had used in the past. He called the police to notify them of his suspicions.

A police officer picked up the package from the shipping company and brought it to the police station. About four to five hours later, Officer Dale Utecht, who had been informed of Ponce's suspicions,[1] examined the package and the teddy bear. Without obtaining a search warrant, Utecht cut open the bear and found about a half pound of marijuana. After further investigation defendant was identified as the person who mailed the package. While these events were occurring, defendant called the shipping office several times using the tracking number and asking about the whereabouts of the package. The officers directed Ponce to return defendant's calls and to tell him to come to the shipping office to pick up his package. On August 12, defendant returned to the shipping company in a car driven by another person. He was placed under arrest and in a search of his person, the vehicle, and a later search of his apartment, other illegal drugs, drug paraphernalia and ammunition were seized.[2]

The court granted the motion to suppress all of the evidence found inside the bear and seized following defendant's arrest, finding that defendant maintained an expectation of privacy in the package and had not abandoned it. The court ruled that there were no exigent circumstances justifying Officer Utecht's search of the teddy bear without a warrant, and that all evidence obtained following defendant's arrest was the product of the unlawful search.[3] The court then dismissed the action on its own motion pursuant to Penal Code section 1385. The People timely appealed pursuant to Penal Code section 1238, subdivision (a)(7).

---

[1] It is unclear whether Officer Utecht knew that the name of the sender was fictitious. At the preliminary hearing in the original proceedings, he testified that Ponce's suspicions were based upon "the way the packages looked, the weight of them, the frequency and the amount he was paying to have these packages shipped, also he was suspicious to the fact that Mr. Pereira would track the packages very carefully." At the hearing on the motion to suppress, Utecht testified that Ponce described his suspicions to him, but did not elaborate further. The record does not reveal whether the name of the addressee was fictitious.

[2] Susan Roark, the driver of the vehicle, was also arrested and jointly charged with transporting and possessing methamphetamine, and charged separately with a misdemeanor vehicle offense. Roark joined in defendant's motion to suppress, which the trial court granted. She is not a party to the appeal.

[3] The court also rejected the district attorney's inevitable discovery argument. That contention has not been renewed on appeal.

## DISCUSSION

In reviewing a motion to suppress, this court reviews the trial court's findings of fact under the deferential substantial evidence standard, but considers independently the application of the facts to the governing legal standard, including the determination of the reasonableness of police conduct. (*People v. Ayala* (2000) 24 Cal.4th 243, 279 [99 Cal.Rptr.2d 532, 6 P.3d 193].)

The Attorney General's sole argument on appeal is that the trial court erred in granting the motion to suppress. No contention is made concerning the scope of the suppression order or the dismissal of the action if the suppression order is upheld. In defending the court's order, there is no suggestion that the initial opening of defendant's package by the proprietor of the shipping company, which disclosed the oddly stitched teddy bear, violated defendant's constitutional rights. Ponce is a private person who was not acting at the behest of governmental agents and he therefore was not subject to the restrictions of the Fourth Amendment. (*Jones v. Kmart Corp.* (1998) 17 Cal.4th 329, 332–333 [70 Cal.Rptr.2d 844, 949 P.2d 941].) There is no question, however, that without first obtaining a warrant, Police Officer Utecht cut open the bear and removed contents that were not in plain view. He was not entitled to expand the scope of the search in this manner if doing so violated the proscriptions of the Fourth Amendment. (*Walter v. United States* (1980) 447 U.S. 649, 656–657 [65 L.Ed.2d 410, 100 S.Ct. 2395] [fact that packages were opened by private party before they were acquired by FBI did not excuse failure to obtain search warrant before FBI expanded scope of the search by viewing contents].)

██ The Fourth Amendment of the United States Constitution prohibits the government from engaging in unreasonable searches and seizures of a person's "effects."[4] "[T]he protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." (*Rakas v. Illinois* (1978) 439 U.S. 128, 143 [58 L.Ed.2d 387, 99 S.Ct. 421].) One who objects to a warrantless search must demonstrate that he or she had a subjective expectation of privacy in the object of the search, and that society recognizes the expectation as reasonable. (*California v. Ciraolo* (1986) 476 U.S. 207, 211

---

[4] The Fourth Amendment to the United States Constitution begins, "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated . . . ."

[90 L.Ed.2d 210, 106 S.Ct. 1809].) Sealed packages sent through the mail are effects entitled to protection under the Fourth Amendment. Both senders and receivers have a legitimate expectation of privacy in their mail. (*United States v. Jacobsen* (1984) 466 U.S. 109, 114 [80 L.Ed.2d 85, 104 S.Ct. 1652].) " 'Whilst in the mail, [letters and packages] can only be opened and examined under like warrant . . . as is required when papers are subjected to search in one's household.' " (*Walter v. United States, supra,* 447 U.S. at p. 655, fn. 5, quoting *Ex parte Jackson* (1877) 96 U.S. 727, 733 [24 L.Ed. 877].) Warrantless searches are presumptively unreasonable. (*Horton v. California* (1990) 496 U.S. 128 [110 L.Ed.2d 112, 110 S.Ct. 2301].) Even when an officer lawfully seizes a package, the Fourth Amendment requires that in the absence of exigent circumstances, the officer obtain a warrant before examining the contents of the package. (*United States v. Jacobsen, supra,* 466 U.S. at p. 114; *U.S. v. Villarreal* (5th Cir. 1992) 963 F.2d 770, 774.)

■ Property that is abandoned is no longer subject to Fourth Amendment protection because one does not have a reasonable expectation of privacy in property that has been abandoned. (*People v. Daggs* (2005) 133 Cal.App.4th 361, 365 [34 Cal.Rptr.3d 649].) The Attorney General argues that defendant's use of a false name and address to send the package in question necessarily relinquished any "legitimate expectation of privacy in the package," so that it was unnecessary to obtain a warrant to examine its contents.

The Attorney General acknowledges that there is no California authority that supports his position and relies primarily on a decision of a New York district court in *U.S. v. DiMaggio* (N.D.N.Y. 1990) 744 F.Supp. 43 (*DiMaggio*). In that case the defendants sent packages containing money to recipients in Florida, and in return received packages of cocaine. (*Ibid.*) Defendants' names never appeared on the packages they sent and the return packages were sent to fictitious names at locations other than defendants' residence. (*Id.* at pp. 43–44.) In holding that the defendants had no standing to question the validity of warrants that were obtained to search those packages, the court held that "expectation of privacy vanishes . . . when the identity of the sender and intended recipient is not indicated . . . on the package. With respect to the unidentified sender, it is as if the package had been abandoned since by withholding from society that he is the source, he has effectively repudiated any connection or interest in the item vis-a-vis society," and thus has abandoned the package. (*Id.* at p. 46.)

■ In *U.S. v. Pitts* (7th Cir. 2003) 322 F.3d 449 (*Pitts*), a divided panel of the Seventh Circuit rejected this broad proposition, although upholding the denial of a suppression motion under the totality of circumstances in that case. The court reasoned that there are many legitimate reasons for which

persons wish to remain anonymous while sending or receiving mail, such as authors and journalists who use pseudonyms, celebrities who wish to avoid intrusion, and government officials and businessmen with security concerns. (*Id.* at pp. 457–458.) "There is nothing inherently wrong with a desire to remain anonymous when sending or receiving a package, and thus the expectation of privacy for a person using an alias . . . is one that society is prepared to recognize as reasonable." (*Id.* at p. 459.) While use of an alias is one factor that may be considered to determine if property has been abandoned, the majority held, it is not dispositive. (*Id.* at pp. 456–459.) The court upheld the finding of abandonment there because the addressee had expressly refused to accept delivery of the package and by using all fictitious names the defendants had rendered the property irretrievable.

■ The majority view in *Pitts* is in accord with the approach in California. "The question whether property is abandoned is an issue of fact, and the court's finding must be upheld if supported by substantial evidence." (*People v. Daggs, supra,* 133 Cal.App.4th at p. 365.) "[T]he intent to abandon is determined by objective factors, not the defendant's subjective intent." (*Ibid.*) The appropriate test is whether defendant's words or actions would cause a reasonable person in the searching officer's position to believe that the property was abandoned. (*Id.* at pp. 365–366.)

Although in this case defendant's use of a fictitious name is evidence that might have supported a contrary finding, there is nonetheless substantial evidence to support the trial court's finding that defendant did not abandon the package. There is no evidence that the name or address of the recipient to whom the package was addressed was fictitious. Moreover, defendant obtained a tracking number for the package, which permitted him to retain significant control over it while in transit. Defendant telephoned Ponce four to five times regarding the whereabouts of the package, objectively demonstrating his continuing interest in it.[5] And the fact that defendant gave Ponce his telephone number and that Ponce was able to return his calls further indicates that defendant did not remain completely anonymous. The trial court concluded, "[E]very other thing [other than the fictitious name and false address] concerning the conduct and the—and the contact that Mr. Pereira has

---

[5] The Attorney General argues that some of these calls were made after Officer Utecht had opened the stuffed bear and thus should not be considered in determining the legality of the search that had already occurred. However, the record does not reveal the precise times of defendant's telephone inquiries and does not preclude the possibility that at least some of the calls were made before the search occurred. In all events, there was sufficient evidence to support the finding that defendant did not abandon the package without regard to the telephone calls.

with Mr. Ponce, the shipper, is I am very interested about my package with my phony name and phony address. I really care about it getting delivered. I care about it so much, that I've left messages that made Mr. Ponce upset. So that's the totality. " There is thus substantial evidence of objective factors that support the trial court's finding that defendant did not abandon his package.

■ Still further, it is unclear from the record what objective facts were known to Officer Utecht at the time of the search that would have lead him to conclude the package had been abandoned. Utecht never clearly indicated that when he opened the bear he was aware that defendant had used a false name and return address on the package. "[W]hether a search is reasonable must be determined based upon the circumstances known to the officer when the search is conducted . . . ." (*People v. Sanders* (2003) 31 Cal.4th 318, 332 [2 Cal.Rptr.3d 630, 73 P.3d 496] [parolee's search condition does not justify warrantless search if the officer is unaware of the condition at the time of the search]; see *Myers v. Superior Court* (2004) 124 Cal.App.4th 1247 [22 Cal.Rptr.3d 369] [same for adult probationer]; *In re Jaime P.* (2006) 40 Cal.4th 128 [51 Cal.Rptr.3d 430, 146 P.3d 965] [same for juvenile probationer].)

■ The Attorney General argues that even if defendant did not abandon his package, his use of a fictitious name for an illegal purpose is not a privacy interest that society recognizes as legitimate. However, we agree with the reasoning of the majority in *Pitts* rejecting this argument. As that opinion noted, there are many legitimate reasons to use a fictitious name. (*Pitts, supra,* 322 F.3d at pp. 457–458.) Because some people use aliases for criminal purposes, it cannot be true that everyone who wishes to remain anonymous when sending mail loses their expectation of privacy. (*Id.* at p. 458.) That approach, the majority observed, "assumes that criminals can forfeit the privacy interests of all persons by using a confidential domain for nefarious ends. Any creative means that a person engaging in illegal activity devises to conceal that fact will lead to the end of privacy for persons engaged in wholly legitimate confidential activities." (*Ibid.*) And, as the *Pitts* opinion also explains, it cannot be the law that *only* those who use aliases for illegal schemes forfeit their expectations of privacy. Such a rule would allow "[t]he illegal contents of the package [to] serve as an after-the-fact justification for a search." (*Ibid.*) "If this were the case, then the police could enter private homes without warrants, and if they find drugs, justify the search by citing the rule that society is not prepared to accept as reasonable an expectation of privacy in crack cocaine kept in private homes." (*Id.* at pp. 458–459.) In short, "We may not justify the search after the fact, once we know illegal activity was afoot; the legitimate expectation of privacy does not depend on the nature of the defendant's activities, whether innocent or criminal." (*Id.* at p. 458.)

Other courts have also concluded that using a fictitious name to escape detection of criminal activity does not necessarily constitute an abandonment of the property to which the name is affixed. (*Walter v. United States, supra*, 447 U.S. at pp. 664–665 [in holding that viewing without a warrant pornographic film that had been shipped using fictitious names for both shipper and consignee was an unreasonable search, majority implicitly rejected dissenters' view that use of the fictitious names " 'amount[ed]' to a relinquishment or abandonment of any reasonable expectation of privacy' "]; *U.S. v. Villarreal, supra*, 963 F.2d at pp. 774–775 ["this court has made clear that individuals may assert a reasonable expectation of privacy in packages addressed to them under fictitious names. [Citations.] . . . [¶] . . . [¶] . . . Villarreal and Gonzales never denied their possessory interest in the drums. They acted through intermediaries and used fictitious names in an effort to escape detection, but they consistently acted as if they were the ones who were to receive the drums. They retained possession of the receipt for the drums, which was the only indication of ownership available."].)

Although others have agreed with the analysis in *DiMaggio, supra*, 744 F.Supp. 43 (*People v. Zahn* (1999) 234 Mich.App. 438 [594 N.W.2d 120, 124]; *Pitts, supra*, 322 F.3d at pp. 459–461 (conc. opn. of Evans, J.); cf. *U.S. v. Walker* (S.D.W.Va. 1998) 20 F.Supp.2d 971), most of the other cases cited by the Attorney General are distinguishable and do not support the proposition that sending a package under a fictitious name, even for an illegitimate purpose, necessarily constitutes an abandonment of the property. (*U.S. v. Daniel* (5th Cir. 1993) 982 F.2d 146, 149 [court questioned whether use of alias deprived defendant of standing to challenge search of package, but assumed he "possessed some type of legitimate expectation of privacy in connection with the package" and held that other suspicious circumstances justified brief detention of the package while search warrant was obtained]; *United States v. Kendall* (9th Cir. 1981) 655 F.2d 199, 201 [defendants expressly disclaimed interest in luggage with false name]; *U.S. v. Wood* (D.Kan. 1998) 6 F.Supp.2d 1213, 1219–1224 [defendant moving to suppress was not shown to be sender or intended recipient of package and thus had no standing to challenge search warrant obtained to search the package].)

Accordingly, the trial court did not err in finding, under the totality of the circumstances, that defendant did not abandon the package by sending it under a fictitious name, and in granting the motion to suppress the evidence obtained as the result of the unlawful search.

## DISPOSITION

The judgment is affirmed.

McGuiness, P. J., and Siggins, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 15, 2007, S153850. Kennard, J., and Baxter, J., were of the opinion that the petition should be granted.