Filed 4/27/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B265937 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA420611) |
| v. | |
| ALEJANDRO O. GUZMAN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Shelly Torrealba, Judge. Affirmed.

Verna Wefald, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and J. Michael Lehmann, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

Defendant challenges his conviction on two counts of lewd and lascivious acts upon a child under 14 years old. As his sole

contention on appeal, Defendant maintains the trial court prejudicially erred when it admitted a recorded telephone conversation between a defense witness and the mother of one of the victims. Defendant argues the ruling contravened the exclusionary rule stated in Penal Code[1] section 632, subdivision (d), which bars the admission of evidence obtained as a result of recording a confidential communication without the consent of all parties. We conclude the "Right to Truth–in–Evidence" provision of the California Constitution (Cal. Const., art. I, § 28, subd. (f), par. (2)), as enacted by the passage of Proposition 8 in 1982, abrogated that exclusionary rule to the extent it is invoked to suppress relevant evidence in a criminal proceeding. We therefore affirm.

## FACTS AND PROCEDURAL BACKGROUND

1. *Charges*

The Los Angeles County District Attorney charged Defendant with two counts of lewd acts upon a child under the age of 14; count 1 pertaining to Defendant's niece, M.M., and count 2 pertaining to Defendant's neighbor, E.F.

2. *Count Two; Lewd Acts Upon E.F.*

E.F. testified that Defendant molested her in May 2011, when she was 10 years old. She had gone to Defendant's home to play with his daughter. At some point, Defendant sat down next to E.F. and pointed out that she had a hole in her leggings. He continued to stare at the hole, which made E.F. uncomfortable. Defendant touched E.F.'s skin through the hole, then told her she had a lot of veins that popped out of her chest. E.F. was wearing

---

[1] Statutory references are to the Penal Code, unless otherwise indicated.

a spaghetti strap top and could feel Defendant staring at her chest. Defendant pointed to her chest and told E.F. she should examine the veins in the restroom. When E.F. went to the restroom, Defendant followed her and stuck his foot in the door before she could close it. He pressed her against the sink, touched her on the chest slowly with his right index finger, then took her hand and rubbed her chest with it. When a downstairs neighbor came up the stairs, E.F. left. She was uncomfortable and scared throughout the incident.

E.F. felt unsafe, but she was too scared to tell her mother. Immediately after the incident, she sent a text message to a neighbor, L.M., who was four or five years older. L.M. is Defendant's niece, and her family lived downstairs from him. E.F.'s text message said Defendant had rubbed her chest and thighs; it did not mention Defendant following her to the bathroom. When they spoke later in person, L.M. told E.F. not to go around Defendant if he made her uncomfortable.

The next day a teacher observed E.F. crying at school. E.F. told the teacher that Defendant had touched her chest and rubbed her leg. The teacher contacted social services and E.F. gave a statement to the police later that day.

3. *Count One; Lewd Acts Upon M.M.*

M.M. testified that Defendant molested her in 2012, when she was 12 years old. M.M. regularly visited Defendant's family to have sleepovers with her cousin (Defendant's daughter). During one overnight visit, M.M. was watching television alone in Defendant's living room when Defendant sat next to her, put his hand inside her pajamas, and touched her vagina. Defendant also pulled his pants down, grabbed M.M.'s hand, and made her touch his penis.

3

In 2013, M.M. told her mother what had happened. The disclosure prompted M.M.'s mother to contact L.M., because M.M. said L.M. had warned M.M. about Defendant. During their conversation, L.M. told M.M.'s mother about the incident involving E.F. M.M.'s mother contacted the police, and M.M. told the investigating officer about the 2012 molestation.[2]

4. *Admission of the Recorded Telephone Conversation Between L.M. and M.M.'s Mother*

On the first day of trial, the court addressed evidentiary issues, including L.M.'s proposed testimony that Defendant never sexually assaulted her. The prosecutor objected that the testimony was irrelevant, because Defendant was not charged with criminal conduct related to L.M. Defense counsel argued the testimony was relevant to M.M.'s credibility, because M.M. told police that Defendant molested L.M. The court agreed the testimony was relevant to M.M.'s credibility.

After the lunch recess, the prosecutor informed the court and defense counsel that M.M.'s mother had recordings of two telephone conversations she had with L.M. following M.M.'s disclosure of the abuse allegations. The prosecutor reported that, in the recordings, L.M. said Defendant touched her a lot,

---

[2] At trial, Defendant testified on his own behalf and denied the accounts given by E.F. and M.M. He testified that he had pointed out some spots or splotches under E.F.'s neck and on her hand, and said he "possibly touched her hand" with his finger. He admitted pointing to her chest, but denied touching her there. He also admitted pointing to a hole in her shorts. He denied following her to the bathroom. He likewise denied ever touching M.M. and claimed the last time she spent the night at his home was in July 2012, not December 2012 when the alleged incident occurred.

sometimes in ways that made her uncomfortable, but Defendant did not touch her in the vagina or breast areas. L.M. also said in the recordings that she believed M.M.'s allegations against Defendant. The prosecutor did not intend to use the recordings in her case-in-chief, but did want to use them if L.M. testified in a way inconsistent with the conversations.

Defense counsel objected to the recordings, citing the exclusionary rule established by section 632, subdivision (d). After a preliminary review of relevant authorities, the court indicated the recordings appeared to be admissible for impeachment purposes. The court stated a final decision on admissibility would not be made until after L.M. testified.

L.M. testified that she had a good relationship with Defendant and lived downstairs from him growing up. Defendant is her uncle and M.M. is her younger cousin. L.M. also said she knew E.F., who was a neighbor and about the same age as M.M.

L.M. confirmed she received a text message from E.F., in which E.F. indicated Defendant rubbed her chest and thighs. L.M. later spoke to E.F. and told her not to go around Defendant if he made her uncomfortable. L.M. did not tell anyone else about E.F.'s disclosure because she did not think it was her business.

L.M. testified she was surprised to learn M.M. had also made allegations against Defendant. She and M.M. were close and M.M. had never said anything about Defendant molesting her before. Although L.M.'s initial reaction was to believe M.M., she also said she was confused as she had never observed M.M. acting uneasy around Defendant.

L.M. later learned that M.M. told police that Defendant had also molested L.M. L.M. testified this had not occurred and that she was angry the accusation had been made.

Following L.M.'s testimony, the court revisited the admissibility of the recorded telephone conversations. After hearing counsels' arguments, the court ruled that "[t]o deny admission of this evidence would be a direct violation of the Right to Truth[-In-]Evidence provision of the California Constitution," which had abrogated the exclusionary rule set forth in section 632, subdivision (d) when voters passed Proposition 8 in 1982.[3] The court also concluded the recording was not made by or at the direction of law enforcement, the recording did not violate the Fourth Amendment, and the evidence was not more prejudicial than probative under Evidence Code section 352. After conducting an Evidence Code section 402 hearing, the court allowed the admission of redacted portions of the recordings for impeachment purposes, insofar as they contradicted critical parts of L.M.'s testimony.

---

[3] The trial court also concluded the recordings were admissible under the exception provided by section 633.5, and as impeachment evidence under *People v. Crow*. (See § 633.5 ["Nothing in Section . . . 632 . . . prohibits one party to a confidential communication from recording the communication for the purpose of obtaining evidence reasonably believed to relate to the commission by another party to the communication of . . . any felony involving violence against the person"]; *People v. Crow* (1994) 28 Cal.App.4th 440, 452 [holding otherwise inadmissible statements made during plea negotiations were admissible for impeachment purposes].) Because the court's ruling was correct under the Right to Truth-in-Evidence provision of the California Constitution (Cal. Const., art. I, § 28), we need not address whether the ruling also was correct under these authorities.

In the portion of the first recording played for the jury, L.M. told her aunt that she "[does not] feel good around [Defendant]" when "wearing shorts," while adding she had not "done anything" because "the truth is he hasn't touched me anywhere else *like* my areas *you know*?  Like my vagina or my breasts *like* directly."[4]  L.M. added, "I know he's capable of doing that," and "[t]hat's why I believe what [M.M.]'s saying."  In the second recording, L.M. affirmed that she had told M.M. to "be careful" around Defendant and that he "fondled" her as well.  L.M. added, "you can imagine *like* sometimes I think about that, and I feel like crying and . . . I mean it didn't happen to me *like* too excessively, but if he touched M.M. then she'll certainly never forget that."

---

[4]     L.M. and M.M.'s mother conversed in Spanish.  The redacted portions of the recordings were played for the jury, and the court provided the jury a transcript that included a Spanish-to-English translation.  Italicized text in the transcript indicates English words interspersed within the conversation.

The court allowed Defendant to recall L.M. to testify regarding the recording. L.M. confirmed she spoke with M.M.'s mother on the telephone, but was unaware the call was being recorded. She testified that she had listened to the recordings and noted they did not include the entire conversation. Concerning the contents of the recordings, L.M. said Defendant had been overly affectionate with her at times, but it did not make her uncomfortable. She explained that Defendant was a "very affectionate" and "very loving and caring person," who sometimes "comes at you too close," but "never had [she] been touched by him in [her] vagina or [her] breast." L.M. testified she was "being sympathetic" when she said on the recording that she believed M.M.

5. *Verdict and Sentence*

The jury found Defendant guilty on both counts. The court sentenced Defendant to a total term of five years in prison, consisting of three years on count one and two years on count two.

## DISCUSSION

As his sole contention on appeal, Defendant argues the trial court prejudicially erred when it admitted the recorded telephone conversations between L.M. and M.M.'s mother into evidence. Specifically, Defendant contends the recordings were inadmissible under section 632, subdivision (d), which bars the admission of evidence obtained by recording a confidential communication without the other party's consent. The trial court ruled the subject exclusionary rule was abrogated by the state Constitution's Right to Truth-in-Evidence provision (Cal. Const., art. I, § 28, subd. (f), par. (2)) when California's voters passed

8

Proposition 8.[5]  We agree Proposition 8 abrogated section 632, subdivision (d) in criminal proceedings where the exclusionary rule is invoked to suppress relevant evidence.

A trial court's ruling on the admissibility of evidence is generally reviewed for abuse of discretion.  (See *People v. Williams* (1997) 16 Cal.4th 153, 196-197; see also *People v. Carmony* (2004) 33 Cal.4th 367, 377 ["a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it"].)  However, where the court's evidentiary ruling turns on the proper application of a statute, the question is one of law that we review de novo.  (See *People v. Grimes* (2016) 1 Cal.5th 698, 712.)

"The California Invasion of Privacy Act (§ 630 et seq.) was enacted in 1967, replacing prior laws that permitted the recording of telephone conversations with the consent of one party to the conversation.  [Citation.]  The purpose of the act was to protect the right of privacy by, among other things, requiring that all parties consent to a recording of their conversation." (*Flanagan v. Flanagan* (2002) 27 Cal.4th 766, 768–769.) Consistent with this purpose, section 632 "prohibits

---

[5]     Defendant's opening brief does not address Proposition 8; rather, it focuses exclusively upon the trial court's other grounds for admitting the recordings—namely, section 633.5 and the exception for impeachment evidence articulated by the court in *People v. Crow, supra,* 28 Cal.App.4th at p. 452.  (See fn. 3, *ante*.) In his reply brief, Defendant argues the cases cited in the respondent brief are inapposite because none specifically applied Proposition 8 to section 632, subdivision (d).  For the reasons discussed above, we conclude Proposition 8 does abrogate section 632, subdivision (d), based on the plain language of the California Constitution and controlling Supreme Court authority.

eavesdropping or intentionally recording a confidential communication without the consent of *all* parties to the communication." (*Coulter v. Bank of America* (1994) 28 Cal.App.4th 923, 928; § 632, subd. (a).) Section 632, subdivision (d) creates the following exclusionary rule for evidence obtained in violation of the statute: "Except as proof in an action or prosecution for violation of this section, evidence obtained as a result of eavesdropping upon or recording a confidential communication in violation of this section is not admissible in any judicial, administrative, legislative, or other proceeding." (§ 632, subd. (d).)[6]

---

[6] In 2016, after the trial court made the challenged evidentiary ruling, the Legislature amended section 632. (Stats. 2016, ch. 855, § 1 (Assem. Bill No. 1671 (2015-2016 Reg. Sess.)), eff. Jan. 1, 2017.) The amendment made "technical, nonsubstantive changes" to portions of the existing law, including section 632, subdivision (d). (Stats. 2016, c. 855§ 1 (Assem. Bill No. 1671 (2015-2016 Reg. Sess.)); cf. § 632, subd. (d) ["Except as proof in an action or prosecution for violation of this section, *evidence* obtained as a result of eavesdropping upon or recording a confidential communication in violation of this section *is not* admissible in any judicial, administrative, legislative, or other proceeding," italics added]; former § 632, subd. (d) ["Except as proof in an action or prosecution for violation of this section, *no evidence* obtained as a result of eavesdropping upon or recording a confidential communication in violation of this section *shall be* admissible in any judicial, administrative, legislative, or other proceeding," italics added].) Because the changes were technical and nonsubstantive, we quote from the statute as currently written.

10

"[I]n 1982, the California voters passed Proposition 8. Proposition 8 enacted article I, section 28 of the California Constitution, which provides in relevant part: 'Right to Truth–in–Evidence. Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding, including pretrial and post conviction motions and hearings . . . .' " (*People v. Lazlo* (2012) 206 Cal.App.4th 1063, 1069, quoting Cal. Const., art. I, § 28, subd. (f), par. (2).) Our Supreme Court has observed that Proposition 8 "was intended to permit [the] exclusion of relevant, but unlawfully obtained evidence, only if exclusion is required by the United States Constitution." (*In re Lance W.* (1985) 37 Cal.3d 873, 890 (*Lance W.*); *People v. Lazlo,* at p. 1069.).) Proposition 8 is applicable to statutory rules of exclusion and evidentiary restrictions. (See, e.g., *Lance W.*, at p. 893; *People v. Ratekin* (1989) 212 Cal.App.3d 1165, 1169 (*Ratekin*).)

While it appears no published opinion has applied Proposition 8 to evidence obtained in violation of section 632, the appellate court in *Ratekin* examined this question with respect to section 631—a provision of the Invasion of Privacy Act that closely resembles section 632. Section 631 "prohibits 'wiretapping,' i.e., intercepting communications by an

unauthorized *connection* to the transmission line."[7] (*Ratekin, supra,* 212 Cal.App.3d at p. 1168.) In language substantively similar to the exclusionary rule at issue in this case, section 631, subdivision (c) provides: "Except as proof in an action or prosecution for violation of this section, no evidence obtained in violation of this section shall be admissible in any judicial, administrative, legislative, or other proceeding." (Cf. § 632, subd. (d); see also fn. 6, *ante*.)

In *Ratekin*, federal agents investigating a narcotics operation obtained a wiretap order from the United States District Court pursuant to section 2518, title 18, United States Code—the federal wiretap statute. (*Ratekin, supra,* 212 Cal.App.3d at p. 1167.) The trial court admitted recordings obtained from the wiretap over the defendant's objection, and the defendant appealed his subsequent conviction on the ground that the evidentiary ruling violated California's Invasion of Privacy

---

[7] As noted, section 632 prohibits "eavesdropping," which the *Ratekin* court described as "the interception of communications by the use of equipment which is not connected to any transmission line." (*Ratekin, supra,* 212 Cal.App.3d at p. 1168.) The practice is different from wiretapping, which is prohibited by section 631, insofar as it does *not* require an unauthorized *connection* to a transmission line, whereas wiretapping does. (*Ibid.*) Further, because wiretapping requires an unauthorized connection, the prohibition established by section 631 is not limited to "confidential communications" as is the case for the prohibition against eavesdropping established by section 632. In all other substantive respects the conduct prohibited by the two statutes is the same.

Act.[8]  Addressing whether the wiretap evidence was admissible
notwithstanding section 631, subdivision (c), the *Ratekin* court
invoked our Supreme Court's holding in *Lance W.*; observing,
under Proposition 8, "relevant evidence may be excluded only if
exclusion is required by the United States Constitution."
(*Ratekin,* at p. 1169, citing *Lance W., supra,* 37 Cal.3d at p. 890.)
Then, citing a uniform consensus regarding the federal wire tap
statute's constitutionality, the *Ratekin* court declared it was
"clear that evidence obtained under the provisions of 18 United
States Code section 2510 et seq. is not required to be excluded by
the United States Constitution." (*Ratekin,* at p. 1169.)  Thus,
because the wiretap evidence was "relevant" and obtained
pursuant to a constitutional federal statute, the *Ratekin* court
held the evidence was properly admitted under Proposition 8,
notwithstanding section 631, subdivision (c).  (*Ratekin,* at
p. 1169.)

 The *Ratekin* court's analysis is sound and wholly apposite
to the evidentiary ruling at issue in this appeal.  Under *Ratekin*,
the recorded telephone conversations between L.M. and M.M.'s
mother are admissible, notwithstanding section 632, subdivision
(d), if the evidence is relevant and not subject to exclusion under

---

[8]  The defendant in *Ratekin* moved to suppress the wiretap
evidence under section 632's exclusionary rule.  (See *Ratekin,
supra,* 212 Cal.App.3d at p. 1167.)  However, the *Ratekin* court
concluded section 632 did not apply because the conduct at issue
involved a wiretap, as prohibited by section 631, not
eavesdropping, as prohibited by section 632.  (*Ratekin,* at
pp. 1168-1169.)  The *Ratekin* court nevertheless considered
whether the evidence should have been suppressed under section
631, subdivision (c).  (See *Ratekin,* at p. 1169.)

13

the United States Constitution.  (*Ratekin, supra,* 212 Cal.App.3d at p. 1169; *Lance W., supra,* 37 Cal.3d at p. 890.)  Both prongs are met in this case.

First, the recorded telephone conversations were not subject to exclusion under the United States Constitution.  This is because the federal Constitution proscribes only acts of government officers or their agents, and M.M.'s mother was acting as neither when she recorded her telephone conversations with L.M.  (See *Skinner v. Railway Labor Executives' Assn.* (1989) 489 U.S. 602, 614 [the Fourth Amendment applies only to the acts of government officers or their agents]; *Jones v. Kmart Corp.* (1998) 17 Cal.4th 329, 333 ["In order for conduct by private parties to be deemed state action under the federal Constitution, 'the party charged with the deprivation [of a federal right] must be a person who may fairly be said to be a state actor.  This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.' "].)

Second, the record supports the trial court's conclusion that the evidence was relevant to impeach L.M.  Defendant was permitted to offer L.M.'s testimony for the purpose of challenging M.M.'s credibility, particularly with respect to M.M.'s allegation that Defendant also molested L.M.  In her direct testimony, L.M. denied that Defendant ever touched her inappropriately, and said that she had no recollection of ever "warning" M.M. about Defendant.  However, in the recorded telephone conversations, L.M. affirmed that she told M.M. to "be careful" around Defendant and she made statements suggesting that Defendant touched her in ways that made her uncomfortable, though never on her breasts or vagina.  On this record, the trial court

14

reasonably concluded the recordings were relevant to the issue of both M.M.'s and L.M.'s credibility.

There is a final issue to address concerning section 632 and Proposition 8. As the People acknowledge, the Legislature has amended section 632 numerous times since the voters passed Proposition 8 in 1982. In 1985, for instance, the Legislature enacted the Cellular Radio Telephone Privacy Act. (Stats 1985, ch. 909, p. 2900.) The focal element of that legislation was section 632.5, which prohibits the interception of cellular telephone communications, absent specified circumstances. (Stats 1985, ch. 909, pp. 2900-2904.) In enacting the statute, the Legislature also amended section 632 and related statutes to reflect the addition of section 632.5, without making substantive changes to the wording of the exclusionary rule set forth in section 632, subdivision (d). Subsequent amendments to the Invasion of Privacy Act have followed the same pattern, in each instance focusing on privacy issues raised by the increased use of cellular and cordless phone technology, without making substantive changes to section 632, subdivision (d). (See Stats 1990, ch. 696, pp. 3267-3269 [adding section 632.6, prohibiting interception of cordless telephone communications]; Stats 1992, ch. 298, pp. 1212-1214, 1216 [adding section 632.7, prohibiting unauthorized recording of cellular or cordless telephone communications]; see also *Flanagan v. Flanagan, supra,* 27 Cal.4th at p. 775.) At least two-thirds of the members of each legislative house voted in favor of the legislation.[9] Thus, the

---

[9] The final votes for the legislation in question were as follows: Senate Bill No. 1431 (1985-1986 Reg. Sess.), the Assembly vote was 64 ayes and 7 noes, the Senate vote was 27 ayes and 4 noes (Sen. Final History, (1985-1986 Reg. Sess.)

15

question presented is whether these legislative enactments revived the exclusionary rule in section 632, subdivision (d), under the exception for newly enacted legislation set forth in Proposition 8. (Cal. Const., art. I, § 28, subd. (f), par. (2) [abrogating exclusionary rules in criminal proceedings, "[e]xcept as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature"].)

Our Supreme Court's analysis in *Lance W.* controls our resolution of this issue. There, the Supreme Court addressed section 1538.5, subdivision (a), which authorizes a criminal defendant to seek suppression of evidence obtained in violation of "state constitutional standards." (*Lance W., supra,* 37 Cal.3d at p. 893; § 1538.5, subd. (a)(1)(B)(v).) As the court noted, after Proposition 8 abrogated that provision, the Legislature amended section 1538.5 twice, once by a two-thirds majority in both houses of the Legislature. (*Lance W.,* at pp. 893–896.) Because article IV, section 9 of the California Constitution provides that "[a] section of a statute may not be amended unless the section is *re-enacted* as amended" (Cal. Const., art. IV, § 9, italics added), the court examined whether the amendments revived that provision. (*Lance W.,* at pp. 893-896.)

---

p. 965); Assembly Bill No. 3457 (1989-1990 Reg. Sess.), the Assembly vote was 69 ayes and 0 noes, the Senate vote was 32 ayes and 2 noes (Assem. Final History, (1989-1990 Reg. Sess.) p. 2223); Assembly Bill 2465 (1991-1992 Reg. Sess.), the Assembly vote was 71 ayes and 0 noes, the Senate vote was 37 ayes and 0 noes (Assem. Final History, (1991-1992 Reg. Sess.), p. 1685.) As the Assembly has 80 members and the Senate has 40 members (Cal. Const., art. IV, § 2, subd. (a)(1), (2)), the affirmative votes constituted at least two-thirds of each house's membership for each piece of legislation.

16

The *Lance W.* court concluded the amendments did not reinstate the abrogated provision, because the effect of the amendments was to re-enact section 1538.5 as it existed *after* the passage of Proposition 8.  (*Lance W., supra,* 37 Cal.3d at p. 896.)  The Supreme Court based its conclusion on Government Code section 9605, which establishes a statutory rule for interpreting legislative intent, "consistent with article IV, section 9" of the California Constitution, when a statute is amended.  (*Id.* at p. 895.)  Government Code section 9605 provides:  "Where a section or part of a statute is amended, it is not to be considered as having been repealed and reenacted in the amended form.  *The portions which are not altered are to be considered as having been the law from the time when they were enacted*; the new provisions are to be considered as having been enacted at the time of the amendment; and the omitted portions are to be considered as having been repealed at the time of the amendment."  (Italics added.)  "The clear intent of Government Code section 9605 is to codify the rule that the unchanged portions of the newly amended statute be 'reenacted' *as they existed immediately prior to the amendment.*"  (*Lance W.,* at pp. 895-896, fn. 18, italics added.)  Because the subject legislation did not materially modify the pertinent provision of section 1538.5, the Supreme Court concluded that "[t]he law which continued without interruption pursuant to Government Code section 9605, and was reenacted by [the subject legislation] pursuant to article IV, section 9, was section 1538.5 *as limited* by the impact of [Proposition 8]."  (*Lance W.,* at p. 896, italics added.)

The same analysis applies to the legislation amending the Invasion of Privacy Act after the passage of Proposition 8.  As explained, none of the subject legislation materially altered

17

section 632.  Rather, in each instance, the legislation's only substantive effect was to amend the language in section 632, subdivision (a) by adding references to newly enacted statutes prohibiting the interception or recording of cellular or cordless telephone communications.  (See Stats 1985, ch. 909, pp. 2900-2904 [adding reference to section 632.5]; Stats 1990, ch. 696, pp. 3267-3268 [adding reference to section 632.6]; Stats 1992, ch. 298, pp. 1212-1214 [adding reference to section 632.7].)  In no case did the subject legislation make substantive changes to the language of section 632, subdivision (d) as it existed after the passage of Proposition 8.  Thus, under our Supreme Court's holding in *Lance W.*, the law which continued without interruption pursuant to Government Code section 9605, and which was reenacted by the subject legislation pursuant to article IV, section 9 of the California Constitution, was section 632, subdivision (d) *as limited* by the impact of Proposition 8.  (*Lance W.,* at p. 896.)

Proposition 8 limited the exclusionary rule set forth in section 632, subdivision (d) by allowing the admission of evidence collected in violation of the Invasion of Privacy Act where the evidence is relevant and its admission is not otherwise barred by the United States Constitution.  (See *Ratekin, supra,* 212 Cal.App.3d at p. 1169; see also *Lance W., supra,* 37 Cal.3d at p. 890.)  For the reasons discussed above, we conclude both prongs are met by the recordings in question.  The trial court did not err when it admitted the evidence.

**DISPOSITION**

The judgment of conviction is affirmed.

**CERTIFIED FOR PUBLICATION**

GOSWAMI, J.*

We concur:

EDMON, P. J.

ALDRICH, J.

---

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.