Filed 8/27/24  Glenn v. The President and Trustees of Santa Clara College CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| HARLOW GLENN et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>THE PRESIDENT AND TRUSTEES OF SANTA CLARA COLLEGE et al.,<br><br>    Defendants and Respondents, | H050735<br>(Santa Clara County<br>Super. Ct. No. 22CV395570) |

Plaintiffs are two individuals and a non-profit association challenging the COVID-19 vaccination policies of Santa Clara University and the actions of two of its employees in connection with enforcing those policies.  Plaintiffs asserted 16 causes of action alleging numerous statutory, constitutional and common law violations.  The trial court sustained the university's demurrer as to all causes of action without leave to amend, on various grounds.

We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.  *The university's COVID-19 vaccine policies*

In late July 2021, the university announced a COVID-19 vaccine requirement for students attending classes or living in residential housing for the 2021–2022 academic

---

[1] We take our facts from those properly pleaded in the operative complaint and matters properly judicially noticed.  (*County of Santa Clara v. Superior Court* (2023) 87 Cal.App.5th 347, 355, fn. 2.) The trial court here granted the university's request for judicial notice of its 2021–2022 Student Handbook.

year, with a deadline of September 1, 2021. The university subsequently announced a second vaccine requirement during winter break of 2021, mandating that students receive a COVID-19 vaccine booster shot to continue with their education for the spring 2022 term. The university indicated that it would not accept religious exemption requests for students, and would only grant limited medical exemptions. The university imposed the mandates on students who attended classes remotely as well as in-person. Plaintiffs allege that the university imposed the mandates "largely in exchange for millions of dollars in federal [funding]."

## B. Plaintiffs' requests for exemptions

### 1. Harlow Glenn

Plaintiff Harlow Glenn was a 20-year-old sophomore at the university at the time this action was commenced in March 2022. Glenn had requested a religious exemption from the university on August 23, 2021, but was denied. She alleges that defendant Deepra Arora, senior director of communications and media relations at the university, also "threatened Ms. Glenn repeatedly through emails and calls about her loss of housing, classes, and other benefits of being an in-person student at [the university] unless Ms. Glenn submitted to the [mandate]."

As a result, Glenn alleges, she took the first dose of the Pfizer COVID-19 vaccine under duress, immediately suffering severe adverse effects, including numbing in her legs and partial paralysis, and was taken to the emergency room for treatment. She then suffered months of severe headaches, menstrual cycle dysfunction, bleeding during urination, hair loss, severe anxiety, overall body pain, and general malaise, many of which continue to affect her. She also contracted "an intense bout of COVID-19" soon after receiving the vaccine.

Glenn then submitted a doctor's note to the university and requested a medical exemption from taking another dose of the vaccine. Glenn alleges that defendant Lewis Osofsky, a campus physician and healthcare provider, interfered with her patient-doctor

2

relationship by contacting her two treating physicians and pressuring them to retract their support for her requested medical exemption. According to Glenn, Osofsky's stated reason for interfering was that he did not personally believe Glenn's adverse effects were severe enough to warrant an exemption because she had not required hospitalization.

Glenn then requested a second medical exemption, but the university rejected that as well, and informed her she would be unable to attend the university or complete her spring semester if she did not submit to another two doses of a COVID-19 vaccine.[2]

### 2. *Lyle Kosinski*

Kosinski was a 30-year-old mechanical engineering master's student in robotics and mechatronics systems at the time the operative complaint was filed. He sought medical, religious and personal exemptions to the university's vaccine mandate, but was denied. As a result, Kosinski was disenrolled from the university before the fall 2021 quarter. At that time, Kosinski had completed 13 of the 18 classes required for graduation in the robotics program. He then sought permission from the university to complete his remaining classes at San Jose State University, which was allowing religious exemptions to their COVID-19 vaccine requirement. However, the university denied his request. It also then revised its university-wide transfer credit policy to prevent unvaccinated students from transferring to, or completing credits at another institution that did not mandate a COVID-19 vaccine or that provided exemptions.

In May 2022, Kosinski submitted a new medical exemption request signed by his personal physician, which the university also denied. At some point later—the operative complaint does not specify when—Osofsky "changed his mind" and said he would

---

[2] Glenn alleges that after the initial complaint was filed in this action in March 2022, the university purportedly granted her third request for a medical exemption on March 28, 2022, but that on June 2 and 3, 2022, the university sent her two e-mails indicating that she needed to submit to additional doses of a COVID-19 vaccine or face disenrollment.

3

support Kosinski's request for a medical exemption; however, at the time of filing, Kosinski had not yet received it or been re-enrolled at the university.

## C. Procedural background

On March 14, 2022, the initial complaint in this action was filed by Glenn, another university student named Jackson Druker, and the Children's Health Defense – California Chapter (CHD-CA). CHD-CA, a 501(c)(3) nonprofit corporation, is the California branch of the Children's Health Defense, and has over 7,000 members throughout California "consisting primarily of parents whose children have been negatively impacted by environmental and chemical exposures, including unsafe vaccines." The complaint was filed against the president and trustees of Santa Clara College (the university), Osofsky and Arora (defendants).

Defendants demurred to the initial complaint on April 14, 2022. In response, plaintiffs amended their complaint. The operative first amended complaint was filed against defendants on June 27, 2022 (FAC) by CHD-CA, Glenn and Kosinski (plaintiffs).[3] Druker was dismissed from the action before the FAC was filed.

### 1. FAC

The FAC alleged 16 distinct causes of action: (1) declaratory relief—state actor (42 U.S.C. § 1983); (2) violation of the Fourteenth Amendment—Substantive Due Process; (3) violation of the Fourteenth Amendment—Equal Protection; (4) violation of the First Amendment—Free Exercise Clause; (5) violation of California Constitution— Free Exercise of Religion; (6) violation of California Constitution—Right to Privacy; (7) violation of California Constitution—Equal Protection; (8) violation of 21 U.S.C. § 360bbb-3, the Food, Drug and Cosmetic Act (FDCA); (9) violation of the Protection of Human Subjects in Medical Experimentation Act, Health & Safety Code § 24170; (10) violation of Unruh Act and Bane Civil Rights Act; (11) breach of implied covenant

_____

[3] Prior to filing the FAC, the plaintiffs in the action at the time twice sought injunctive relief against the university's vaccine policy, which the trial court denied.

4

of good faith and fair dealing (brought by Glenn and Kosinski against the university); (12) breach of contract (brought by Glenn and Kosinski against the university); (13) negligence (brought by Glenn and Kosinski against all defendants); (14) intentional infliction of emotional distress (brought by Glenn and Kosinski against all defendants); (15) tortious interference with contractual relationship (brought by Kosinski against Osofsky); and (16) conspiracy to induce breach of contract (brought by Glenn and Kosinski against all defendants).

Plaintiffs sought declaratory relief, an injunction preventing the university from enforcing its vaccine mandate, including any additional booster dose requirement in the future, and damages awarded to Glenn and Kosinski.

### 2. Demurrer

Defendants demurred to the FAC on July 28, 2022. They argued that plaintiffs lacked standing to bring their claims for declaratory and injunctive relief because Glenn and Kosinski had received medical exemptions from the university and were thereby in compliance with the vaccine policy, so they faced no prospective injury from its continued enforcement, and because CHD-CA is not subject to the policy and had alleged no direct harm from its enforcement as to any specified member.

In addition, defendants argued: (1) the constitutional causes of action (causes 1–5 and 7) fail because defendants are a private university and its employees, not state actors; (2) the right to privacy cause of action (cause 6) fails because requiring immunizations does not raise a constitutional issue; (3) the FDCA cause of action (cause 8) fails because the statute does not provide a private cause of action; (4) the Health and Safety Code, Unruh Act, and Bane Act causes of action (causes 9 and 10) fail because: (i) the COVID-19 vaccine cannot credibly be characterized as a "medical experiment," and the university neither forced nor administered it, (ii) the vaccine mandate, which applies equally to all students, furthers a goal of maintaining the health of the campus community and in no way discriminates against anyone; and (iii) plaintiffs have not alleged any

5

constitutional or statutory violations, as required to demonstrate a Bane Act claim; (5) the contract-based causes of action (causes 11 and 12) fail because, under the alleged contracts, the university was authorized to implement and enforce the mandate; and (6) the tort claims (causes 13–16) fail because they did not allege (i) that the university acted "unreasonably" by implementing the mandate; (ii) that defendants acted in an "extreme and outrageous" manner regarding Glenn's medical exemption request or Kosinski's initial non-compliance with the mandate; or (iii) that defendants had tortiously "interfered" with any relationships between students and their doctors.

### 3. Trial court ruling

The trial court sustained the demurrer without leave to amend on September 22, 2022. It held that Glenn and Kosinski lacked standing to bring their claims for declaratory and injunctive relief because they had received medical exemptions from the university's vaccine mandate and therefore faced no prospective harm from its enforcement. Although the FAC did not allege that Glenn and Kosinski had received medical exemptions, the trial court noted that plaintiffs had conceded that fact in their opposition to defendants' demurrer. With respect to CHD-CA, the trial court held that the FAC had not identified any individual members with standing, so it could not assert claims for declaratory and injunctive relief either.

The trial court also held that plaintiffs' constitutional claims set forth in the first through fifth, and seventh causes of action, fail to state claims sufficient to constitute causes of action because defendants are not "state actors," but rather are a private university and its employees.

In addition, the court held that, under well-settled law, where a challenged action primarily concerns health and safety, no fundamental privacy right is at stake and there is a presumption of constitutional validity. Moreover, even if a legally protected privacy right were implicated, the trial court was "not persuaded" that the university's vaccine mandate constituted an unconstitutional, serious invasion of that right because

6

defendants' interest in promoting the health of its students defeats any privacy-based objection plaintiffs might have, thereby defeating the sixth cause of action.

With respect to the seventh cause of action for violation of the FDCA, the trial court relied on federal law holding that no private right of action exists under the statute. For that reason, plaintiffs cannot state a claim for violation of that statute.

The ninth cause of action for violation of Health and Safety Code section 24170 failed to state a claim, the trial court held, because plaintiffs conceded defendants did not administer the vaccine, and the FAC does not allege facts showing the vaccine constitutes a "medical experiment" under the statute or that it was coerced upon them.

Similarly, the trial court held that the 10th cause of action for violation of the Unruh Act and the Bane Act—which generally bar discrimination on the basis of protected characteristics in places of public accommodation and businesses—failed to state a claim for relief because it did not allege facts showing that defendants engaged in intentional discrimination and willful, affirmative misconduct. Instead, the university's vaccine mandate applies equally to all students and is therefore not actionable under the Unruh Act. In addition, plaintiffs had not identified a protected characteristic discriminated against by the policy.

With respect to the 11th and 12th causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing, Glenn and Kosinski alleged that the university had breached the terms of enrollment and the financial terms and conditions set forth in the student handbook by implementing and enforcing the vaccine mandate. The trial court held that these causes of action failed to allege any breach because the contracts themselves provide that the university may "modify its services or change its programs at any time," which "logically includes placing conditions on who may attend class based on reasonable health and safety concerns and policies directed at ensuring the wellbeing of the [university] community."

7

Similarly, with respect to the 13th cause of action for negligence, the trial court held that the FAC did not adequately plead breach of duty. Specifically, plaintiffs' "vague allegations regarding the purported unreasonableness of the [vaccine policy] are insufficient to establish the requisite breach."

In the 14th cause of action, Glenn and Kosinski alleged that defendants intentionally caused them emotional distress and that Osofsky engaged in "extreme and outrageous behavior" by actively attempting to get Glenn's physicians to retract medical exemptions previously submitted for her and "attempting to impugn and intimidate" Kosinski from again seeking a medical exemption from the vaccine policy. The trial court held that this cause of action failed to plead defendants had engaged in conduct that qualifies as "extreme and outrageous," because implementing and enforcing a vaccine mandate recommended by leading public health authorities "and attempting to ascertain the basis of Glenn and Kosinski's medical exemption requests are not acts that are 'so extreme as to exceed all bounds of that usually tolerated in a civilized community.'" In addition, the court held, the FAC did not plead any facts establishing that Glenn and Kosinski experienced "severe emotional distress" as a result of defendants' conduct.

Finally, in the 15th and 16th causes of action, Glenn alleged that Osofsky tortiously interfered with her private contractual relationships with her treating physicians, while she and Kosinski alleged that defendants conspired to interfere with the private physician-patient relationships of university students to implement and enforce the vaccine mandate. The trial court held that plaintiffs failed to plead how the purported contracts with her physicians were breached and that, absent an underlying breach, there can be no legally prohibited conspiracy.

The trial court sustained the demurrer as to all causes of action without leave to amend.

A judgment of dismissal was entered on November 2, 2022. Plaintiffs timely appealed.

8

## II. DISCUSSION

### A. Standard of review

We review de novo a judgment of dismissal based on a sustained demurrer. (*Organizacion Comunidad de Alviso v. City of San Jose* (2021) 60 Cal.App.5th 783, 790.) If the allegations of the operative pleading state a cause of action under any legal theory, we will reverse. (*Ibid.*) In applying this standard, we assume the truth of all facts alleged in the complaint, but do not consider conclusory factual or legal allegations. (*B & P Development Corp. v. City of Saratoga* (1986) 185 Cal.App.3d 949, 953.) "The plaintiff has the burden of showing that the facts pleaded are sufficient to establish every element of the cause of action and overcoming all of the legal grounds on which the trial court sustained the demurrer." (*Martin v. Bridgeport Community Assn., Inc.* (2009) 173 Cal.App.4th 1024, 1031.)

When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).) Nevertheless, the burden remains on the plaintiff to show a reasonable possibility of curing a defect. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 (*Schifando*).)

### B. Analysis

#### 1. Standing

To state a valid cause of action, a complaint must adequately allege every element of the cause of action, as well as the plaintiff's standing to sue. (*Schaeffer v. Califia Farms, LLC* (2020) 44 Cal.App.5th 1125, 1134, citing *Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1490–1491; *Peterson v. Cellco Partnership* (2008) 164 Cal.App.4th 1583, 1589.)

9

" ' "To have standing, a party must be beneficially interested in the controversy; that is, he or she must have 'some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large.' [Citation.] The party must be able to demonstrate that he or she has some such beneficial interest that is *concrete and actual, and not conjectural or hypothetical.*" ' [Citation.] This standard 'is equivalent to the federal "injury in fact" test ....' [Citation.] ' " 'Without standing, there is no actual or justiciable controversy, and courts will not entertain such cases.' " ' [Citation.]" (*Dominguez v. Bonta* (2002) 87 Cal.App.5th 389, 413.)

For declaratory relief, " 'an actual controversy that is currently active is required for such relief to be issued, and both standing and ripeness are appropriate criteria in that determination. [Citation.]' " (*D. Cummins Corp. v. United States Fidelity & Guaranty Co.* (2016) 246 Cal.App.4th 1484, 1489 (*D. Cummins*), quoting *Otay Land Co. v. Royal Indemnity Co.* (2008) 169 Cal.App.4th 556, 562 (*Otay Land Co.*).) " 'One cannot analyze requested declaratory relief without evaluating the nature of the rights and duties that the plaintiff is asserting, which must follow some recognized or cognizable legal theories that are related to subjects and requests for relief that are properly before the court.' " (*D. Cummins, supra*, 246 Cal.App.4th at p. 1489, quoting *Otay Land Co., supra,* 169 Cal.App.4th at p. 562; see also, *Gafcon, Inc. v. Ponsor & Associates* (2002) 98 Cal.App.4th 1388, 1403 [declaratory relief operates prospectively, not for the redress of past wrongs].)

Similarly, "injunctive relief lies only to prevent threatened injury and has no application to wrongs that have been completed." (*Scripps Health v. Marin* (1999) 72 Cal.App.4th 324, 332.) "It should neither serve as punishment for past acts, nor be exercised in the absence of any evidence establishing the reasonable probability the acts will be repeated in the future." (*Id.*, citing *Cisneros v. U.D. Registry, Inc.* (1995) 39 Cal.App.4th 548, 574.)

### a. Glenn and Kosinski

Plaintiffs argue that they properly alleged individual and associational standing for the causes of action seeking declaratory and injunctive relief. With respect to the individual plaintiffs, they contend the trial court improperly accepted defendants' assertion in their demurrer that Glenn and Kosinski had received medical exemptions and therefore were in compliance with the university's vaccine policy and "thus face no prospective injury from continued enforcement of it."

According to plaintiffs, though, the FAC itself does not allege the facts defendants asserted in their demurrer. Instead, the FAC only alleges the university had continued to demand that Glenn get further booster doses despite granting her "some type of temporary exemption in March 2022," and the university had not yet granted Kosinski any medical exemption or re-enrolled him. Nor had either student been granted an exemption that would allow them to avoid any further booster requirements that the university might impose in the future. For that reason, plaintiffs argue, they were still affected by the university's vaccine policy.

In their opposition to the demurrer, though, plaintiffs stated: "It is not surprising that Defendants have now granted the named Plaintiffs in this action 'permanent' medical exemptions after numerous denials, only after this litigation commenced, and only to immediately use these belatedly granted exemptions to claim Plaintiffs now lack standing to continue this lawsuit. However, Plaintiffs Glenn and Kosinski have already suffered numerous harms because of Defendants' outrageous actions to enforce their Mandate, and thus have standing to sue on all of their claims for damages."

A court may treat a party's admissions in a brief as contradicting allegations in a complaint. (See, e.g., *Artal v. Allen* (2003) 111 Cal.App.4th 273, 274, fn. 2 [" 'While briefs and argument are outside the record, they are reliable indications of a party's position on the facts as well as the law, and a reviewing court may make use of statements therein as admissions against the party. [Citations.]' "]; *Mangini v. Aerojet-*

11

*General Corp.* (1996) 12 Cal.4th 1087, 1097–1098 [concessions in party's brief may be taken as admissions against the party].)  In addition, a court may reject allegations that are contradicted by judicially noticed facts.  (*Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1474.)

The trial court here treated plaintiffs' concession in their opposition to the demurrer as an admission contradicting the allegations in the FAC.  It therefore declined to grant defendants' request for judicial notice of documents purportedly showing plaintiffs' compliance with the university's vaccine mandate.  On appeal, plaintiffs argue that their statement in the opposition to demurrer did not admit that exemptions had actually been granted, but instead only repeated and quoted defendants' own claims.  However, the trial court did not construe the statement in that manner—nor do we.  Notably, in their opening brief on appeal, plaintiffs did not address their statement in the opposition to the demurrer, or object to the trial court's treatment of it as a concession; instead, they argued only that the allegations in the FAC must be accepted as true, notwithstanding any statements to the contrary in their opposition to the demurrer.  Only in their reply brief did they object for the first time to the trial court's treatment of their statement.

Because plaintiffs conceded that they have received medical exemptions, and are therefore in compliance with the university's vaccine mandate, they lack standing to bring their causes of action seeking declaratory or injunctive relief.

### b. CHD-CA

Plaintiffs argue that CHD-CA has associational standing.  Under that rule, "even in the absence of injury to itself, 'an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.' " (*United Farmers Agents Association, Inc. v. Farmers Group,*

*Inc.* (2019) 32 Cal.App.5th 478, 488 (*United Farmers*), quoting *Hunt v. Washington Apple Advertising Comm'n* (1977) 432 U.S. 333, 343 (*Hunt*).)

"The doctrine of associational standing 'was developed in the federal courts under the "case or controversy" requirement of article III of the United States Constitution.' [Citations.]  Nonetheless, California courts have applied the doctrine, including the three *Hunt* requirements.  [Citation.]  (*United Farmers, supra*, 32 Cal.App.5th at p. 488.)

Plaintiffs argue that they adequately alleged CHD-CA's associational standing because the FAC alleged that "CHD-CA has members who are students attending [the university] themselves, including but not limited to Plaintiff Glenn and Plaintiff Kosinski, as well as parents of students attending SCU who have not submitted to all or part of the Mandate and do not intend to submit to the Mandate, including any additional booster dose requirements."

Plaintiffs argue that the trial court incorrectly held that CHD-CA did not have standing "because no individual member of the association has been identified *by name*." According to plaintiffs, the *Hunt* requirements set forth above do not include identifying an individual member by name.

However, as a factual matter, the trial court did not actually hold that an association must identify a member *by name* to establish standing.  Instead, it held that "the identification of individual members in an association with standing to maintain claims is required in order to establish that the association has the requisite standing to maintain the claim on those members' [behalf]."  That is consistent with the first element in *Hunt* that an association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right.

In any case, we review the trial court's ruling, not its reasoning or rationale.  (*J.B. Aguerre, Inc. v. American Guarantee & Liability Insurance Co.* (1997) 59 Cal.App.4th 6, 15.)  The FAC here alleged only that CHD-CA has members who are students attending the university who have not submitted to the university's vaccine mandate.  That is

13

insufficient to establish that those members themselves would have standing to sue in their own right. The FAC does not allege any actual facts regarding how those students have been harmed by the university's vaccine mandate including, for example, whether they have been denied exemptions or been disenrolled from the university. Those conclusory allegations are insufficient to survive demurrer. (*Curcini v. County of Alameda* (2008) 164 Cal.App.4th 629, 650.)

Because plaintiffs lack standing to assert their claims for declaratory or injunctive relief, the demurrer was properly sustained as to the first through eighth causes of action, which exclusively seek such relief.[4]

### 2. *Constitutional causes of action – state actor*

As set forth above, the trial court held that plaintiffs' constitutional causes of action failed to state claims sufficient to constitute causes of action because defendants are not " 'state actors.' " Plaintiffs argue that the trial court erred because that finding requires a factual inquiry and cannot be made as a matter of law. They contend the FAC adequately alleged that the university acted as a "state actor" by colluding with Santa Clara County, the State, and the federal government, in a coordinated effort to administer COVID-19 vaccines to as many students as possible to receive millions in COVID relief funding and advance a vaccination agenda that the government could not legally impose on its own.

Plaintiffs argue the trial court erred because the FAC adequately alleges that they have a legally protected privacy interest and an objectively reasonable expectation of privacy under the circumstances, and that the university's conduct constituted a serious invasion of their privacy.

---

[4] Prior to oral argument, counsel for defendants notified the court by letter that, as of April 2, 2024, the university's COVID-19 vaccination policy no longer requires that students be vaccinated. The university did not request that the court take judicial notice of any such policy change, which therefore is not in the record.

We need not reach this issue because we hold that plaintiffs lack standing to bring this cause of action and the demurrer was properly sustained on that basis.

### 3. FDCA

The eighth cause of action alleges that the relevant portion of the FDCA—21 U.S.C. § 360bbb-3 (e)(1)(A)(ii)—imposes certain conditions on the dissemination of products that have received emergency use authorization (EAU), ensuring that individuals to whom the product is administered are informed of, among other things, the option to accept or refuse administration of the product. It further alleges that defendants violated that statute by failing to provide university students the option to refuse the vaccines and boosters.

The trial court sustained the demurrer as to this cause of action based on federal law holding that no private right of action exists under the statute. Plaintiffs argue that the statute contains an implied private right of action, and distinguish the authority the trial court cited.

We need not reach this issue because we hold that plaintiffs lack standing to bring this cause of action and the demurrer was properly sustained on that basis.

### 4. Human Subjects in Medical Experimentation Act

The ninth cause of action alleges defendants violated the Protection of Human Subjects in Medical Experimentation Act (Act), Health and Safety Code section 24170. The Act, adopted in 1978, states that it was "the intent of the Legislature, in the enacting of this chapter, to provide minimum statutory protection for the citizens of this state with regard to human experimentation and to provide penalties for those who violate such provisions." (Health & Saf. Code, § 24171, subd. (d).) It states that, "except as otherwise provided in this section, no person shall be subjected to any medical experiment unless the informed consent of such person is obtained." (Health & Safe. Code, § 24175, subd. (a).)

15

"Medical experiment" is defined in the Act as: "(a) The severance or penetration or damaging of tissues of a human subject or the use of a drug or device, as defined in Section 109920 or 109925, electromagnetic radiation, heat or cold, or a biological substance or organism, in or upon a human subject in the practice or research of medicine in a manner not reasonably related to maintaining or improving the health of the subject or otherwise directly benefiting the subject [¶] (b) The investigational use of a drug or device as provided in Sections 111590 and 111595 [¶] (c) Withholding medical treatment from a human subject for any purpose other than maintenance or improvement of the health of the subject." (Health & Saf. Code, § 24174.)

The Act also specifies who is liable for damages for violating its provisions, including: "[a]ny person who is primarily responsible for conduct of a medical experiment and who negligently allows the experiment to be conducted without a subject's informed consent, as provided in this chapter, shall be liable to the subject in an amount not to exceed ten thousand dollars ($10,000), as determined by the court." (Health & Saf. Code, § 24176, subd. (a).)

The trial court held that plaintiffs failed to state a claim because (1) defendants did not administer the vaccine, (2) there are no factual allegations showing that the vaccine constitutes a "medical experiment," and (3) there are no factual allegations establishing coercion.

Plaintiffs argue the trial court erred because (1) the statute is not limited to those who physically administer a medical experiment, (2) the FAC does allege that the vaccines constitute a medical experiment within the meaning of the Act, and (3) the FAC repeatedly alleges coercion.

In arguing the statute is not limited to those who physically administer a medical experiment, plaintiffs contend that where they "can link [defendants] to the medical experimentation plan, the Act may come into play. Indeed, Section 24172(j) of this Act specifically covers the situation where there is an *intervention* of force, fraud, deceit,

16

duress, coercion or undue influence on the subject's decision, as is the case here, whereby students, including [plaintiffs], were harassed, intimidated, threatened, and/or otherwise coerced by agents of [the university] into submitting to participating in this medical experiment in order to remain enrolled at [the university]. But for [the university's] mandate, [they argue, they] would not have submitted to an unwanted medical experiment, [thereby] making [the university] the intervening force and the one primarily responsible for students submitting to this medical experiment without informed consent."

We find the argument unpersuasive. First, nothing in Health and Safety Code section 24172(j) addresses the meaning of the phrase "primarily responsible for conduct of a medical experiment" as used in section 24176, subdivision (a). Second, even if plaintiffs were correct that "primarily responsible" is not limited to those who physically administer a medical experiment—a proposition for which they cite no authority—they have not identified any allegations in the FAC to support their contention that defendants were primarily responsible here. The portions of the FAC they cite allege only that defendants coerced students into taking the vaccines. Even accepting those allegations as true, they do not establish that defendants were "primarily responsible for conduct of a medical experiment."

Accordingly, plaintiffs failed to state a claim for violation of the Act and we need not address the other arguments on this issue.

### 5. *Unruh Act and Bane Act*

The 10th cause of action alleges violations of the Unruh Act and Bane Act.

### a. *Unruh Act*

The purpose of the Unruh Act is to "create and preserve 'a nondiscriminatory environment in California business establishments by "banishing" or "eradicating" arbitrary, invidious discrimination by such establishments.' [Citations.] 'The Act stands as a bulwark protecting each person's inherent right to "full and equal" access to "all

17

business establishments." [Citations.]' " (*White v. Square, Inc.* (2019) 7 Cal.5th 1019, 1025.)

Civil Code section 51, subdivision (b), provides: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition ... are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Civil Code section 52, subdivision (a), provides: "Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51 ... is liable for each and every offense for the actual damages, and any amount that may be determined by a jury ...."

Despite this broad application, the Unruh Act "does not extend to practices and policies that apply equally to all persons…." (*Turner v. Association of American Medical Colleges* (2008) 167 Cal.App.4th 1401, 1408.) "A policy that is neutral on its face is not actionable under the Unruh Act, even when it has a disproportionate impact on a protected class. [Citations.]" (*Ibid.*)

Plaintiffs argue that the university's vaccine mandate is not neutral and instead discriminates on the basis of religion, medical condition, and disability or perceived disability. However, plaintiffs do not cite to any allegations in the FAC establishing that the vaccine mandate is not facially neutral. They argue that Glenn and Kosinski were discriminated against based on religion because their requests for exemptions were denied, while university faculty were granted such requests. However, the FAC does not allege that the challenged policy applies unequally to all students or discriminates based on religion. It merely alleges that Glenn and Kosinski were denied requests for religious exemptions, which is insufficient to state a claim under the Unruh Act.

Similarly, plaintiffs argue they "were discriminated against on the basis of a medical condition and/or genetic information because they were treated differently than those students who agreed to submit to mRNA medical experimentation." Again,

18

though, the FAC does not allege that the vaccine mandate applied unequally; instead, it alleges only that those who chose not to comply with it were disproportionately affected.

### b. Bane Act

The relevant section of the Bane Act provides: "If a person or persons, whether or not acting under color of law, interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, the Attorney General, or any district attorney or city attorney may bring a civil action for injunctive and other appropriate equitable relief in the name of the people of the State of California, in order to protect the peaceable exercise or enjoyment of the right or rights secured." (Civil Code, § 52.1, subd. (b); *Schmid v. City and County of San Francisco* (60 Cal.App.5th 470, 482 (*Schmid*).) "Private parties may bring Bane Act claims under subdivision (c) of the statute on the same grounds." (*Schmid, supra*, at p. 482.)

" ' "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." ' " (*Cornell v. City and County of San Francisco* (2017) 17 Cal.App.5th 766, 791–792, quoting *Simmons v. Superior Court* (2016) 7 Cal.App.5th 1113, 1125.)

Speech alone is not sufficient to support an action under subdivision (b) of the Bane Act, "except upon a showing that the speech itself threatens violence against a specific person or group of persons; and the person or group of persons against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property and that the person threatening violence had the apparent ability to carry out the threat." (Civil Code, § 52.1, subd. (k).) Thus, "[s]peech is insufficient to establish the requisite threat unless it includes threat of violence." (*Julian*

19

*v. Mission Community Hospital* (2017) 11 Cal.App.5th 360, 395 (*Julian*) ["plaintiff must show 'the defendant interfered with or attempted to interfere with the plaintiff's legal right by threatening or committing violent acts' "]; see also *Center for Bio-Ethical Reform, Inc. v. Irvine Co., LLC* (2019) 37 Cal.App.5th 97, 115.)

Moreover, conclusory allegations of forcible and coercive interference with a plaintiff's constitutional rights are insufficient to state a Bane Act cause of action. (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 69 (*Allen*), citing *Aubry v. Tri-City Hospital District* (1992) 2 Cal.4th 962, 966–967.)

Here, plaintiffs argue that the trial court erred by determining defendants to be non-state actors and sustaining the demurrer as to the Bane Act claim on that basis. According to plaintiffs, the trial court was required at the pleading stage to accept the allegations of defendants' state actor status as true. Plaintiffs also argued in the trial court in opposition to the demurrer that it is immaterial for purposes of their Bane Act claim whether defendants are state actors because the Act "applies to any person, whether acting under color of law, whether defendant is a state or private actor."

Plaintiffs are correct that the Bane Act is not limited to defendants who are state actors or who act under color of law. "Claims may be brought under Section 52.1, subdivision (a), against rights-interfering conduct by private actors as well as by public officials…." (*Jones v. Kmart Corp.* (1998) 17 Cal.4th 329, 338 (*Jones*).) Notwithstanding that rule, certain rights can only be violated by a state actor, in which case claims for violations of such rights by non-state actors could not be maintained. (See, e.g., *Jones, supra,* at p. 334 [only the government can directly violate the Fourth Amendment right against unreasonable search and seizure].)

In any event, we need not address those issues here because, regardless of the nature of the rights allegedly violated, or whether defendants were state actors, the FAC did not adequately allege any actual threats of violence beyond mere speech. (*Julian, supra,* 11 Cal.App.5th at p. 395.) Instead, it alleged, for instance, that the university's

20

vaccine mandate "coerces unwanted medical treatments and does not provide a viable 'choice' on whether to accept or refuse the unwanted medical treatments because students are given the Hobbesian 'choice' of submitting to an invasion of their bodily autonomy or losing their already commenced educations, housing, tuition, future careers, school credits towards a particular degree, and all other benefits of being an SCU student."

These are the sort of conclusory allegations of forcible and coercive interference, but with no allegations of actual threats of violence beyond mere speech, which are insufficient to state a Bane Act cause of action. (*Allen, supra,* 234 Cal.App.4th at p. 69.) Plaintiffs have not identified any allegations of actual threats of violence.

Although the trial court did not base its ruling on this ground, our review is de novo and "[a]n order sustaining a demurrer must be affirmed if it is correct on any ground asserted in the demurrer, independent of the trial court's stated reasons." (*Rossi v. Sequoia Union Elementary School* (2023) 94 Cal.App.5th 974, 985.) Moreover, although the parties did not brief this issue on appeal, defendants argued in their demurrer that plaintiffs' allegations of forcible and coercive interference with their constitutional and statutory rights were conclusory and therefore inadequate under the Act. Accordingly, plaintiffs had an opportunity to address the issue.

### 6. *Contract-based claims*

In the 11th and 12th causes of action, Glenn and Kosinski allege breach of contract and breach of the implied covenant of good faith and fair dealing. They contend the contract between the parties consists of the student handbook for the 2021–2022 academic year and a document that appears to be entitled "2021–2022 Online Agreements, Financial Terms and Conditions," which they attached as exhibits to the FAC.

Glenn and Kosinski allege that the terms of those contracts did not require taking any of the COVID-19 vaccines to attend the university. Defendants breached those contracts, they allege, when they denied Glenn's request for a medical exemption,

threatened her with removal from campus and prohibition from enrolling in classes unless she acquiesced to taking the vaccine, and continued to threaten her with disenrollment from future semesters if she did not comply with future requirements under the vaccine mandate, including any new boosters.

With respect to Kosinski, the FAC alleges defendants breached the contracts by disenrolling him from the university for not complying with the vaccine mandate, refusing any exemption or accommodation, and preventing him from completing his remaining credits at another institution.

The trial court held that these claims fail because they do not allege any actionable breach of contract. Specifically, the court noted that the alleged contract expressly provides that the university may " 'modify its services or change its programs at any time,' " which logically includes placing conditions on who may attend class based on reasonable health and safety concerns and policies directed at ensuring the well-being of the university community.

The elements of a cause of action for breach of contract are: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." (*Oasis West Realty*, *LLC v*. *Goldman* (2011) 51 Cal.4th 811, 821.)

"When reviewing whether a plaintiff has properly stated a cause of action for breach of contract, we must determine whether the alleged agreement is 'reasonably susceptible' to the meaning ascribed to it in the complaint. [Citation.] ' "So long as the pleading does not place a clearly erroneous construction upon the provisions of the contract, in passing upon the sufficiency of the complaint, we must accept as correct plaintiff's allegations as to the meaning of the agreement." ' " (*Klein v*. *Chevron U.S.A.*, *Inc*. (2012) 202 Cal.App.4th 1342, 1384–1385, quoting *Aragon–Haas v. Family Security Insurance Services, Inc.* (1991) 231 Cal.App.3d 232, 239 (*Aragon-Haas*); citing *Connell*

*v*. *Zaid* (1969) 268 Cal.App.2d 788, 795 [when considering a complaint challenged by demurrer, plaintiff's construction of a contract should be accepted, if reasonable].)

"Whether a contract is ambiguous is a question of law." (*Aragon-Haas*, *supra*, 231 Cal.App.3d at p. 239, citing *Hillman v*. *Leland E*. *Burns*, *Inc*. (1989) 209 Cal.App.3d 860, 866.)

Plaintiffs argue here that the trial court erred by "improperly resolving the ambiguous terms 'services' and 'programs' in [defendants'] favor," disregarding plaintiffs' own interpretation of those terms, and not allowing plaintiffs the opportunity to present any extrinsic evidence.

However, as defendants argue on appeal, plaintiffs did not adequately allege that the contract prevented the university from implementing the vaccine mandate. Instead, they alleged only that because the contract did not expressly identify and authorize COVID-19 vaccine mandates, their imposition necessarily constituted breach: "[n]one of the terms of the initial contracts entered into by plaintiffs for the 2021–2022 school year required taking any of the [vaccines] in order to attend [the university]."

Plaintiffs reference the "Communicable Diseases Policy" of the 2021–2022 Student Handbook—which plaintiffs label "immunization requirements"—and allege that the policy "did not include a requirement for students to be immunized against [COVID-19] to attend [the university], and therefore this requirement did not form part of any contract." However, they do not identify any specific terms within the policy which defendants allegedly breached, nor offer any interpretation of the terms.

More is required to state a valid claim for breach of contract. It is true that if a contract set out in the complaint or attached as an exhibit is ambiguous, the plaintiff's interpretation must be accepted as correct in testing the sufficiency of the complaint. (*Aragon-Haas*, *supra*, 231 Cal.App.3d at p. 239.) However, even where a contract is ambiguous, " 'it is proper, if not essential, for a plaintiff to allege its own construction of the agreement.' " (*Ibid*.) Plaintiffs have not alleged or offered any meaning or

23

interpretation to which the agreement is reasonably susceptible. "Facts alleging a breach, like all essential elements of a breach of contract cause of action, must be pleaded with specificity." (*Levy v. State Farm Mutual Auto Insurance Co.* (2007) 150 Cal.App.4th 1, 5–6, citing *Bentley v. Mountain* (1942) 51 Cal.App.2d 95, 98 [general averments that defendants violated contract insufficient; pleader must allege facts demonstrating breach].)

The 11th and 12th causes of action fail to state claims for relief.

### 7. *Negligence*

The 13th cause of action alleges that defendants breached a duty of care owed to Glenn and Kosinski by failing to evaluate the safety of the vaccine mandate it implemented, failing to undertake any data analysis of whether its policy was reasonable, coercing and creating duress, and refusing religious and medical exemption requests until the lawsuit commenced.

The trial court held the FAC failed to adequately plead a breach of duty, and that its "vague allegations regarding the purported unreasonableness of the [mandate] are insufficient to establish the requisite breach." In addition, the trial court held that the FAC essentially pleaded the opposite by alleging that the university adhered to leading public health guidance regarding the need for COVID-19 vaccination in higher education.

Plaintiffs argue that the FAC set forth specific allegations regarding how defendants acted unreasonably, by: (1) failing to evaluate the safety of the vaccine policy; (2) failing to undertake any data analysis of whether the policy was reasonable; (3) coercing and creating duress for students; (4) repeatedly refusing religious and medical exemptions; (5) failing to honor the right to refuse experimental products as required by federal law; (6) coercing and improperly influencing plaintiffs to submit to human medical experiments without informed consent; and (7) preventing students like Kosinski from completing their remaining units elsewhere.

24

Further, they argue, the trial court's conclusion that defendants reasonably relied on "leading public health guidance" was "an improper ideological determination on the merits -- and ignores the numerous allegations in the FAC that even the 'leading' public health authorities knew at the time [the university] imposed its Mandate, including the additional Spring 2022 booster doses, that the Products were experimental, ineffective, based on shoddy political science, and harmful."

Notwithstanding plaintiffs' characterization of the FAC, the negligence cause of action ultimately alleges that defendants breached their duty of care to Glenn and Kosinski by implementing the vaccine mandate. However, as the trial court noted, plaintiffs also allege that, in doing so, defendants were following the guidance of the Centers for Disease Control (CDC), as well as State and Santa Clara County public health officials. Courts have long held that deferring to or following public health guidance on vaccinations is reasonable. " 'What is for the public good, and what are public purposes, and what does properly constitute a public burden, are questions which the legislature must decide upon its own judgment…." (*Abeel v. Clark* (1890) 84 Cal. 226, 231 [denying mandamus to compel public school to admit non-vaccinated student]; see also, *Roman Catholic Diocese v. Cuomo* (2020) 592 U.S. 14, 18 ["Stemming the spread of COVID–19 is unquestionably a compelling interest."].)

Plaintiffs have not alleged any actual facts which, even if accepted as true, would establish that following CDC guidance in the midst of a global pandemic was unreasonable and therefore a breach of duty.

Plaintiffs' allegation that defendants breached a duty of care by preventing Kosinski and other students from completing their studies elsewhere also fails to state a claim for relief. The FAC alleges that the university denied Kosinski's request to have credits completed at a different university count towards his degree. However, it does not allege how or why that constituted a breach of any duty. To the extent plaintiffs mean to allege that the university's policy or decision was based on or motivated by its desire to

25

implement its vaccine mandate, the FAC does not allege as much. On the contrary, its allegation that the university denied Kosinski's request to complete his credits elsewhere was supported by an exhibit depicting e-mail exchanges between Kosinski and a professor at the university. However, the actual e-mails do not include anything showing that the university denied the request based on its vaccine policy. Nor do the e-mails show that the university changed any policy regarding allowing credits at other institutions to count toward university degrees—on the contrary, the professor with whom Kosinski was e-mailing stated only that an associate dean was making the " 'no- xfer units once you start the program' an explicitly written policy."

### 8. *Intentional infliction of emotional distress*

The 14th cause of action alleges that defendants intentionally inflicted emotional distress on Glenn and Kosinski by implementing the vaccine mandate and intentionally interfering with the private doctor-patient relationship between Glenn and her treating physicians.

To state a cause of action for intentional infliction of emotional distress, a plaintiff must show: "(1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." (*Gabrielle A. v. County of Orange* (2017) 10 Cal.App.5th 1268, 1289, quoting *Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1259.) "Outrageous conduct is conduct which exceeds the bounds of that usually tolerated in civilized society and must be directed at the plaintiff or occur in the plaintiff's presence." (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 903.) "Whether conduct is outrageous is usually a question of fact." (*Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 204.)

The trial court determined that plaintiffs' allegations failed to state a claim because implementing and enforcing a vaccine mandate recommended by leading public health authorities and attempting to ascertain the basis of Glenn and Kosinski's medical exemption requests are not acts that are "so extreme as to exceed all bounds of that usually tolerated in a civilized community." In other words, although it is usually a question of fact whether conduct is outrageous, the trial court determined that, as a matter of law, the alleged conduct here was not outrageous.

Exercising our independent review, we reach the same conclusion. As with plaintiffs' negligence cause of action, the alleged outrageous conduct here consists of taking steps to implement the vaccine mandate based on guidance from local, state and federal public health officials in the midst of a global pandemic. While plaintiffs may object to that conduct, it is not "outrageous" within the meaning of a claim for intentional infliction of emotional distress.

### 9. *Tortious interference with contractual relationship*

In the 15th cause of action, Glenn alleges that Osofsky intentionally interfered with her private contractual relationships with her doctors by intervening in the doctors' determinations that the COVID-19 vaccines were dangerous for Glenn.

The trial court held that Glenn had failed to plead how the alleged contracts were breached by Osofsky's conduct. Because an essential element of a cause of action for interference with contractual relations is an actual breach or disruption of the contractual relationship, the court held, the cause of action fails.

"To prevail on a cause of action for intentional interference with contractual relations, a plaintiff must plead and prove (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." (*Reeves v. Hanlon* (2004) 33 Cal.4th 1140, 1148.)

Plaintiffs argue on appeal that the underlying breach of contract was Glenn's doctors' retraction of their treatment recommendations on the basis of Osofsky's interference. However, no such allegations appear in the FAC, nor does it otherwise identify any specific terms or provisions of a contract that were allegedly breached. Because an underlying breach is an essential element of a claim for interference with a contractual relationship, the cause of action fails.

### 10. Conspiracy to induce breach of contract

In the 16th cause of action, Glenn and Kosinski allege that the defendants conspired to intervene in their private contractual relationships with their doctors. This cause of action fails for the same reasons as the 15th cause of action for interference with contractual relationship. That is, it requires the allegation of an actual underlying breach of contract, which is absent from the FAC.

### 11. Leave to amend

As set forth above, when a demurrer is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment. (*Blank, supra,* 39 Cal.3d at p. 318.) However, the burden still remains on the plaintiff to show that reasonable possibility. (*Schifando, supra,* 31 Cal.4th at p. 1081.)

That burden requires that plaintiffs specifically show what facts they could plead to state valid causes of action if allowed the opportunity to amend. (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 890 (*Cantu*), citing *Blank, supra,* 39 Cal.3d at p. 318.) To meet that burden on appeal, plaintiffs must "enumerate the facts and demonstrate how those facts establish a cause of action." (*Cantu, supra*, at p. 890, citing *Trustees of Capital Wholesale Electric etc. Fund v. Shearson Lehman Brothers, Inc.* (1990) 221 Cal.App.3d 617, 622, 626–627; *McMartin v. Children's Institute International* (1989) 212 Cal.App.3d 1393, 1408.) "Absent such a showing, the appellate

court cannot assess whether or not the trial court abused its discretion by denying leave to amend." (*Cantu, supra*, at p. 890.)

Plaintiffs have failed to carry this burden here. In their opening brief on appeal, they only sporadically argue that certain causes of action could be amended to add more facts. For instance, with respect to the 14th cause of action for intentional infliction of emotional distress, plaintiffs argue that they "could have easily amended their FAC to address any alleged defect in pleading but were given no opportunity to do so by the court below. For example, specific additional facts regarding plaintiffs' distress and the effect the activities of SCU and its agents had on them could be alleged. Facts regarding standard policies for on campus physicians interacting with students and their doctors could also be alleged to show departure from the standard of care." However, plaintiffs fail to specify what those facts are—instead, they merely assert that they would allege them, if given the opportunity.

Similarly, with respect to the 15th and 16th causes of action for interference with contract and conspiracy to induce breach of contract, plaintiffs argue that any "deficiency could have been easily cured by amendment. For example, more facts regarding the doctor patient relationship could have been asserted, and further information regarding the conversations Osofsky had with Glenn's doctors, and how he persuaded them to retract their recommendations, could also be alleged." Again, though, plaintiffs were required to enumerate such facts rather than simply provide the promise of "more facts" and "further information."

Although plaintiffs offered additional facts in their reply brief, particularly with respect to CHD-CA's standing, we decline to consider those arguments. " 'Obvious considerations of fairness in argument demand that the appellant present all of [its] points in the opening brief. To withhold a point until the closing brief would deprive the respondent of [its] opportunity to answer it or require the effort and delay of an additional brief by permission. Hence the rule is that points raised in the reply brief for the first time

29

will not be considered, unless good reason is shown for failure to present them before."
[Citations.]' " (*Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335,
fn. 8, quoting 9 Witkin, Cal. Procedure (3d ed. 1985) § 496, p. 484; see also *Reid v. City
of San Diego* (2018) 24 Cal.App.5th 343, 369 ["In the reply brief, Plaintiffs contend the
trial court abused its discretion in not granting leave to amend. However, Plaintiffs did
not make this argument in their opening brief and, therefore, the issue is forfeited."]

In addition, with respect to CHD-CA's associational standing, plaintiffs had an
opportunity to amend in the trial court, but failed to do so. In the demurrer to the initial
complaint, defendants argued that plaintiffs had not sufficiently alleged associational
standing for CHD-CA because they had not identified specific members with
standing. Plaintiffs' response to the demurrer was to file the FAC, which did not include
any additional allegations on that issue. Generally, "when, following a demurrer, a
plaintiff who is afforded leave elects not to amend a complaint, we presume the
complaint states as strong a case as the plaintiff can muster." (*Piccinini v. California
Emergency Mgmt. Agency* (2014) 226 Cal.App.4th 685, 688.)[5]

Plaintiffs have failed to carry their burden of demonstrating a reasonable
possibility of amending their causes of action to state valid claims. Accordingly, we
conclude the trial court did not abuse its discretion sustaining the demurrer without leave
to amend.[6]

---

[5] At oral argument, counsel for both parties conceded that the university had
recently rescinded the challenged vaccine policies. Although that fact is not in the
record, as a practical matter, it would appear to preclude any reasonable possibility the
defect could be cured by amendment. (*Blank, supra,* 39 Cal.3d at p. 318.)

[6] Because we affirm the judgment as described herein, we decline defendants'
request for judicial notice as unnecessary to our resolution of the appeal. (*Jordache
Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 755, fn. 6.) We
also decline to consider any arguments in defendants' brief which rely on the materials
sought to be judicially noticed, or on any other evidence not included in the record.

## III. DISPOSITION

The judgment is affirmed.  Defendants shall recover their costs on appeal.

_____

                                              Wilson, J.


I CONCUR:




_____

                   Greenwood, P. J.








Glenn et al. v. The President and Trustees of Santa Clara College et al.
H050735

Lie, J., Concurring:

I join the court's conclusion that the demurrer to the first amended complaint was properly sustained without leave to amend. Although I agree with much of the majority's cogent analysis, I read differently than my colleagues the trial court's rationale for denying plaintiff Children's Health Defense - California Chapter (CHD-CA) leave to amend. In my view, the trial court based its exercise of discretion as to CHD-CA on the futility of amendment on the merits of its claims, not on any failure by CHD-CA to show it could plead facts sufficient to establish associational standing to bring those claims.[7] So rather than rely on an appellate forfeiture theory (see maj. opn., *ante*, at pp. 28–29), I would affirmatively hold that the trial court did not abuse its discretion. On appeal as in the trial court, CHD-CA has demonstrated its inability to adequately plead (1) state action to support its claims under Title 42, United States Code section 1983, the U.S. Constitution, and Article I, Sections 4 and 7 of the California Constitution; (2) unconstitutional invasion of a fundamental privacy right to support its claims under Article I, Section 1 of the California Constitution; and (3) a private right of action under the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 360bbb-3(e)(1)(A)(ii)).

As to its claims under Title 42, United States Code section 1983, the United States Constitution, and Article I, Sections 4 and 7 of the California Constitution (the first through fifth and seventh causes of action), CHD-CA offers to amend its constitutional causes of action. Just not with facts that, if true, would support treating defendants as state actors. It is well established that on a demurrer we treat as admitted only "material facts properly pleaded" but not "contentions, deductions, or conclusions." (*Evans v. City*

---

[7] With respect, I also construe differently than my colleagues both what CHD-CA represented to the trial court it could allege on associational standing and the policy of "great liberality" with which amendment may be permitted. (Compare *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 970–971 with *Reid v. City of San Diego* (2018) 24 Cal.App.5th 343, 369; see maj. opn., *ante*, at pp. 29–30.)

*of Berkeley* (2006) 38 Cal.4th 1, 6.) CHD-CA's inability to articulate a factual foundation for its conclusory allegations of "collusion" between a "secretive" university committee intent on furthering a "government 'vaccination' agenda" supported the trial court's determination that CHD-CA's inability to plead state action was irremediable. (Cf. *Manhattan Community Access Corp. v. Halleck* (2019) 587 U.S. 802, 809 ["a private entity can qualify as a state actor in a few limited circumstances—including, for example, (i) when the private entity performs a traditional, exclusive, public function, [citation]; (ii) when the government compels the private entity to take a particular action, [citation]; or (iii) when the government acts jointly with the private entity, [citation]"]; see also *Ciraci v. J.M. Smucker Co.* (6th Cir. 2023) 62 F.4th 278, 284 [holding that federal contractor enforcing vaccine mandate required by government was not a state actor]; *Children's Health DEF. v. Meta Platforms, Inc.* (9th Cir. Aug. 9, 2024, No. 21-16210) ___ F.4th ___ (2024 WL 3734422, pp. *16, 13–14) [holding that "generalized federal concerns about vaccine misinformation" did not render Facebook's restriction on plaintiff's anti-vaccination messaging state action].)

As to its sixth cause of action, CHD-CA insists that conditioning enrollment at a private university on compliance with a vaccine mandate is sufficient to state a claim for invasion of its members' privacy rights under Article I, section 1 of the California Constitution. But as a matter of law CHD-CA can establish neither a reasonable expectation of privacy in avoiding a private institution's pandemic-related conditions of enrollment nor a serious invasion of its members' privacy interests. (See generally *Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 35–37 [requiring "a specific, legally protected privacy interest," a plaintiff's "reasonable expectation of privacy," and a "serious invasion" of that privacy interest].) Although I take no issue with CHD-CA's assertion of a legally protected privacy interest, I reject its false equivalency between voluntarily unvaccinated students' interest in compelling a private university to educate them without evaluating their claims for medical exemption from school policy, on the

2

one hand, and pregnant minors' interest in choosing whether to abort or carry to term an unwanted pregnancy (see *American Academy of Pediatrics v. Lungren* (1997) 16 Cal.4th 307, 327) or even imprisoned defendants' interest in preventing the state's use of their psychiatric records to secure their civil commitment (*People v. Martinez* (2001) 88 Cal.App.4th 465 [finding no serious privacy violation]).  The California Supreme Court has long recognized that "the opportunity to consent or refuse" diminishes the reasonable expectation of privacy, and that disqualification from participation "does not render . . . consent . . . involuntary in any meaningful legal sense." (*Hill*, at p. 42.) "Participation in any organized activity carried on by a private, nongovernment organization necessarily entails a willingness to forgo assertion of individual rights one might otherwise have in order to receive the benefits of communal association." (*Id*. at p. 43.)

As to its eighth cause of action, asserting a private right of action under the Federal Food, Drug, and Cosmetic Act, CHD-CA can supply no basis to gainsay the expressly contrary direction of Congress.  (21 U.S.C. § 337(a) [providing that except for enumerated enforcement actions permitted to the states, "all . . . proceedings for the enforcement, or to restrain violations, of [the Act] shall be by and in the name of the United States"]; see also *Fiedler v. Clark* (9th Cir. 1983) 714 F.2d 77, 79.)

For these reasons, I agree with the trial court that amendment would appear to be futile on the merits, and I would therefore conclude that the trial court did not abuse its discretion in denying CHD-CA leave to amend.

_____
LIE, J.

Glenn et al. v. The President and Trustees of Santa Clara College et al.
H050735